Opinion filed February 8, 2007




















 
 
  
 
 







 
 
  
 
 




Opinion filed February 8, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00140-CV 

                                                    __________

 

      HAMEED AGENCIES (pvt) LTD. and HAMEED USA, INC.,
Appellants

                                                             V.

                 J.C.
PENNEY PURCHASING CORPORATION, Appellee

 



 

                                         On
Appeal from the 416th District Court

                                                          Collin County,
Texas

                                               Trial
Court Cause No. 416-220-01

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

Hameed Agencies (pvt) Ltd. and Hameed USA, Inc.
(Hameed) filed suit against J.C. Penney Purchasing Corporation alleging breach
of contract and fraudulent inducement. 
The trial court granted J.C. Penney=s
motion for summary judgment on the fraudulent inducement cause of action and
submitted the breach of contract claim to a jury that found for Hameed and
awarded damages of $6,796.62.  The trial
court then awarded Hameed costs and attorney=s
fees of $17,585.  Both sides have
appealed the trial court=s
judgment.  We affirm.

                                                              I.
Background Facts








In 1995, Hameed and J.C. Penney executed an agency
agreement which covered the three-year period ending September 15, 1998.[1]  The agreement required Hameed to locate and
investigate potential Pakistani suppliers and to assist J.C. Penney in
acquiring suitable merchandise from them. 
In exchange, J.C. Penney promised to pay Hameed a 5% commission on all
orders from Pakistan.    In
January 1997, J.C. Penney advised Hameed that it was discontinuing the use of
exclusive commissionaire agents and that it wished to enter into a nonexclusive
agency agreement.  However, no new
agreement was reached.  In December 1997,
Hameed sent J.C. Penney an e-mail expressing concern about its commitment and
their direct contact of Pakistani suppliers. J.C. Penney acknowledged that its Singapore
office was surveying Pakistani suppliers, and in May 1998, J.C. Penney notified
Hameed that it was terminating their agreement effective September 15 B the date the agreement would otherwise
expire by its terms.

The parties disputed Hameed=s
entitlement to commissions on the orders J.C. Penney placed directly with
Pakistani suppliers.  Despite the agency
agreement, J.C. Penney contacted Pakistani suppliers and placed orders in
excess of 1.25 million dollars between December 12, 1997, and August 14, 1998.  It placed orders in excess of 4 million
dollars in the first six months after the agreement=s
termination.  J.C. Penney agreed to pay
Hameed a commission on orders placed before September 15, but Hameed contended
that the agreement also entitled it to commissions on the orders that were
placed within the first six months after its termination.

                                               II.
Issues

Hameed contends that the trial court erred by
rendering summary judgment on its fraudulent inducement claim and by failing to
award prejudgment interest.  J.C. Penney
complains of the trial court=s
attorney=s fees
and court costs awards.

                                                                   III.
Discussion

A. Did the Trial Court Err by Granting Summary Judgment on
Hameed=s
Fraudulent Inducement Claim?

 








Traditional summary judgment motions are governed
by Tex. R. Civ. P. 166a(c) which
provides that a summary judgment shall be rendered if the evidence properly
before the court indicates that Athere
is no genuine issue as to any material fact and the moving party is entitled to
judgment as a matter of law.@  When a defendant files a traditional motion
for summary judgment, it must either conclusively negate at least one of the
essential elements of a plaintiff=s
cause of action or conclusively establish each element of an affirmative
defense.  Randall=s Food Mkts., Inc. v. Johnson, 891
S.W.2d 640, 644 (Tex.
1995).  If a defendant negates an element
of a plaintiff=s claim,
the burden shifts to the plaintiff who must produce evidence creating a genuine
issue of material fact on that disputed element.  Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex.
1995).

No-evidence motions are governed by Tex. R. Civ. P. 166a(i).  The party without the burden of proof may
file a no-evidence motion after an adequate time for discovery has passed.  The movant asks for summary judgment on the
ground that the nonmoving party lacks supporting evidence for one or more essential
elements of its claim.  Id. The trial court must sustain the
motion unless the nonmovant produces sufficient evidence to create a genuine
issue of material fact.  Id.

A no-evidence motion for summary judgment is
essentially a directed verdict granted before trial to which the appellate
court applies a legal sufficiency standard of review.  King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 750-51 (Tex.
2003).  A no-evidence summary judgment
will be sustained when (1) there is a complete absence of evidence of a vital
fact, (2) the trial court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact, (3) the evidence
offered to prove a vital fact is no more than a scintilla, or (4) the evidence
conclusively establishes the opposite of a vital fact.  Id.
at 751.

Hameed=s
original petition contained a cause of action labeled AFRAUD
AND FRAUDULENT INDUCEMENT.@  Despite the reference to fraud, Hameed
contends no fraud claim was actually stated. 
Instead, Hameed contends that it pleaded two separate fraudulent
inducement causes of action.  The first
relates to the execution of the agency agreement.  The second alleges that J.C. Penney deceived
it into not exercising its right to terminate the contract early.  While the two claims are not separated by
subheading or otherwise, Hameed=s
petition did state that J.C. Penney Aalso
induced Plaintiffs to remain working for Defendant=s
behalf and expend time and money on behalf of Defendant when it knew no
significant orders would be placed with Plaintiffs@
(emphasis added).  Furthermore, Hameed=s damage allegation clearly
differentiated between damages incurred due to the inducement to enter into the
original contract and damages caused by the inducement to continue performing
on the contract.








J.C. Penney filed a motion for summary judgment
contending that Hameed could not establish one or more elements of its fraud
claim.  J.C. Penney specifically argued
that this claim was barred by limitations and that there was no evidence of any
false representation.  The motion does
not directly address Hameed=s
contention that it was fraudulently induced to continue performing under the
agreement; however, J.C. Penney=s
prayer asked the trial court to dismiss Hameed=s
suit with prejudice.

Hameed conceded in its summary judgment response
that there was no evidence that he was fraudulently induced into executing the
agency agreement.  But, it contended that
J.C. Penney had not addressed its second fraudulent inducement claim and, therefore,
that summary judgment was inappropriate on it. 
In the alternative, Hameed referenced evidence supporting its continued
performance claim.

Hameed=s
summary judgment evidence consisted of various correspondence, e-mails, memos,
and discovery responses.  This evidence
establishes that J.C. Penney had utilized exclusive commissionaire agents to
represent it in other countries; that it had decided to terminate these
relationships and replace them with nonexclusive agency agreements; that Hameed
was advised of this decision; that there were disagreements between the parties
over Hameed=s
contractual performance; and that, prior to the termination of the agency
agreement, J.C. Penney=s
Singapore office directly contacted several Pakistani factories without Hameed=s prior knowledge or consent.

Hameed=s
response also included the affidavit of M.M. Pervaiz Hameed.  This affidavit primarily addressed the breach
of contract claim but, with respect to the second fraudulent inducement claim,
stated:

During the time of the contract I was never told
there was a problem with my performance or that of Plaintiffs.  I was frequently encouraged by the
representatives of J.C. Penney Purchasing [C]orporation to continue working on
behalf of them until I received notice of non-renewal in May 1998.  Plaintiffs could have exercised the 90-day
early termination clause at any time, but did not do so and believed in
continued reliance on Defendant=s
encouragement.  Had I known their
decision to secretly place orders without telling Plaintiffs= [sic] as they have done, I would have
terminated my residence in Plano to reduce expenses and exercised the early
termination clause instead of remaining in Plano as long as I did as a dupe of
Defendant and continuing to work at my own and the company=s expense in providing factories and
samples for potential orders which Defendant knew would never come through
Hameed Agencies (Pvt.) Ltd.

 

. . . .

 

We eventually learned that there had been an ongoing
attempt by Defendant to secretly place orders without our knowledge, while
encouraging us to continue delivering to the Defendant information about source
factories with the offer of large potential further orders which never came
through us.








J.C. Penney filed a reply to Hameed=s summary judgment response and argued
that its summary judgment motion extended to all of Hameed=s fraudulent inducement claims.  It also filed portions of Hameed=s deposition that it contended
affirmatively disproved any fraud claim because it admitted that no one made a
false promise to it.[2]  The trial court granted summary judgment on
Hameed=s
fraudulent inducement claim and denied summary judgment on Hameed=s breach of contract claim.

1. Did J.C. Penney=s
Motion for Summary Judgment Address Both of Hameed=s  Fraudulent Inducement Claims?

 

A summary judgment motion must present the grounds
upon which it is made, and it must stand or fall on these grounds alone.  Rule 166a(c). 
When the motion is a no-evidence motion, the movant must specifically
set forth the elements of the adverse party=s
claim or defense for which there is no evidence.  Rule 166a(i). 
Issues not expressly presented to the trial court by written motion or
response to the motion for summary judgment cannot be considered by an
appellate court.  City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671, 674-75 (Tex.
1979).

Neither Hameed=s
petition nor J.C. Penney=s
motion for summary judgment were as clear as perhaps they could have been.  The test for each, however, is whether they
provided adequate notice.   See Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 896 (Tex. 2000) (a pleading
provides fair notice of a claim when an opposing attorney of reasonable
competence can examine the pleadings and ascertain the nature and basic issues
of the controversy and the relevant testimony). 
A ground for summary judgment is sufficiently presented if the motion
gives the nonmovant fair notice of the claim involved.  Thomas v. Cisneros, 596 S.W.2d 313,
316 (Tex. Civ. App.CAustin
1980, writ ref=d
n.r.e.).








Fair notice depends upon the specific facts of
each case.  The ultimate inquiry is
whether the motion provided fair notice of the movant=s
basis for contending judgment is appropriate 
See Almanza v. Navar, No. 08-04-00093-CV, 2005 WL 1992494 (Tex.
App.CEl Paso
2005, no pet.);  see also Shkolnick v.
Coastal Fumigators, Inc., 186 S.W.3d 100, 103-04 (Tex. App.CHouston [1st Dist.] 2005, no pet.)
(motion for summary judgment that stated that the defendant had not committed a
wrongful act was sufficient to address both of plaintiffs= DTPA claims).

 J.C. Penney=s motion for summary judgment indicates
that it did not appreciate the lack of a common-law fraud claim or the presence
of two separate fraudulent inducement claims, but it clearly asserted that there
was no evidence of any false representation and asked for a dismissal with
prejudice.  There is some question
whether Hameed=s second
fraudulent inducement claim is actually a common-law fraud claim, but either
would require proof of a material misstatement.[3]  J.C. Penney=s
reply to Hameed=s summary
judgment response further developed this point by highlighting Hameed=s deposition testimony where he
admitted that no false promises were made to him.  This was sufficient to put Hameed on notice
of its need to offer evidence of a misrepresentation. The trial court,
therefore, did not err by considering whether J.C. Penney was entitled to
summary judgment on both of Hameed=s
fraudulent inducement causes of action.

2. Was J.C. Penney Entitled to Summary Judgment on Hameed=s Second Fraudulent Inducement Claim?

 

Hameed has consistently characterized his claim
that he was misled into not exercising the agency agreement=s ninety-day termination clause as a
fraudulent inducement cause of action. 
Fraudulent inducement is ordinarily used to deny the existence of an
otherwise valid contract.  When one
individual fraudulently induces another to enter into a contract, no contract
results because the one who was fraudulently induced gave no real consent to
the agreement.  Wright v. Sydow,
173 S.W.3d 534, 546 (Tex. App.CHouston
[14th Dist.] 2004, pet. denied).  








Because Hameed is not attempting to void the
contract but is instead relying upon the duties the contract created, its claim
sounds much more like a breach of contract or a common-law fraud claim.  We will, however, treat it as a fraudulent
inducement cause of action for purposes of this appeal.[4]  See Morriss v. Enron Oil & Gas Co.,
948 S.W.2d 858, 872 n.14 (Tex. App.CSan
Antonio 1997, no writ) (noting that pleadings should be construed as the
parties construed them, stating Aif
a plaintiff insists that a contract action is a tort action, his pleadings will
be given the construction that he has given them and acted upon@).

Hameed does not dispute that a valid contract
existed or contend that any fraudulent promises were made to it when the
agreement was executed.  As we understand
its claim, Hameed contends that it invested time and resources developing
Pakistani suppliers for J.C. Penney because it was misled into believing that
this work would result in commissions but that J.C. Penney changed its mind and
took advantage of Hameed by dealing directly with the suppliers it had
developed.  Presumably, if Hameed had
known that J.C. Penney had decided not to place any orders through Hameed, it
would have terminated the contract early and directed its efforts at other
business opportunities. 

Because Hameed does not contend that it was
fraudulently induced into entering into the agency agreement, the basis for its
claim must be that J.C. Penney originally intended to comply with the agreement
but that it later changed its mind and thereafter fraudulently misled him.  To establish this claim, J.C. Penney=s subsequent action must be more than
mere breach of the agreement.  See
Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 13 (Tex. 1996) (a party=s
actions may breach duties in tort, contract, or both, but mere nonfeasance
under a contract creates liability only for breach of contract).  When the alleged fraud is a false promise of
future performance, a claimant must prove that the promise was made with no
intention of performing at the time the promise was made.  Schindler v. Austwell Farmers Coop.,
841 S.W.2d 853, 854 (Tex.
1992).








Generally, the damage must also be more than
economic loss to the subject of the contract itself.  See Jim Walter Homes, Inc. v. Reed,
711 S.W.2d 617, 618 (Tex.
1986).  The Texas Supreme Court created
an exception for fraudulent inducement claims in Formosa Plastics Corp. USA
v. Presidio Eng=rs
& Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998).  But in Formosa, the alleged fraud
induced the execution of the agreement and not continued performance under a
valid contract.  Consequently, we do not read
Formosa
to necessarily exempt Hameed=s
claim from the independent injury rule.  Cf.
Heil Co. v. Polar Corp., 191 S.W.3d 805, 815-17 (Tex. App.CFort Worth 2006, pet. denied) (because
plaintiff incurred no independent injury, its fraud and negligent
misrepresentation claims sounded in contract and not tort); Castle Tex.
Production Ltd. P=ship
v. Long Trusts, 134 S.W.3d 267, 274 (Tex. App.CTyler
2003, pet. denied) (A[E]xcept
for [a few] special contexts, and in the absence of independent injury, if a
contract spells out the parties=
respective rights regarding a particular matter, the contract, not common law
tort principles, governs any dispute about that matter.@).

The only summary judgment evidence that arguably
establishes a fraudulent promise is Hameed=s
affidavit where he states that he was frequently encouraged by J.C. Penney
representatives to continue working on J.C. Penney=s
behalf.  Hameed argues that this was
fraudulent because, while J.C. Penney encouraged Hameed to work, it was also
secretly contacting source factories to place orders.  Assuming that J.C. Penney=s direct contacts violated the agency
agreement, this sounds in contract and not in tort because, but for the
contract, J.C. Penney had every right to do so.

J.C. Penney concedes that the facts cast it in an
unflattering light, but Hameed=s
general assertion, when placed in context, is simply insufficient to overcome
J.C. Penney=s motion
for summary judgment.  Hameed admitted in
his deposition that no false promises were made to him. Hameed=s exclusive agency contract expired by
its own terms on September 15, 1998, and J.C. Penney advised Hameed in January
1997 that it was discontinuing the use of exclusive commissionaire agents.  Thus, from January 1997 until the contract=s termination in September 1998, Hameed
was on notice that its exclusive agency relationship was time limited.

Hameed points to no evidence that it was
encouraged to do anything more than perform under the contract, that it was
falsely led to believe that it would have an exclusive agency relationship
after September 1998, or that it sustained damages beyond economic damages
associated with the contract.  Without
more, J.C. Penney=s breach
of the agreement and its encouragement of Hameed to continue his contractual
performance simply cannot constitute a fraudulent promise sufficient to sustain
a fraudulent inducement cause of action. 
Hameed=s first
issue is overruled.

B. Did the Trial Court Err by Not Awarding
Prejudgment Interest?

Hameed next argues that the trial court erred
because the final judgment awarded contractual damages of $6,796.62 but did not
include any prejudgment interest.  Hameed
concedes that the decision to award prejudgment interest lies within the trial
court=s
discretionary authority, but it relies upon Johnson & Higgins of Texas,
Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507 (Tex. 1998), to argue that the
failure to award prejudgment interest in this instance was an abuse of that
discretion.








Kenneco concerned the method of calculating
prejudgment interest rather than the trial court=s
discretion to award it.  Texas courts have
instructed trial courts to rely upon equitable principles and public policy
when determining whether to award prejudgment interest.  See Citizens Nat. v. Allen Rae Invs.,
142 S.W.3d 459, 487 (Tex.
App.CFort
Worth 2004, no pet.).  Courts have also
recognized that prejudgment interest serves to fully compensate the injured
party and is not intended to be a form of punishment.  See, e.g., Miller v. Kendall, 804
S.W.2d 933, 945 (Tex. App.CHouston
[1st Dist.] 1990, no writ) (trial court did not abuse its discretion by denying
prejudgment interest when stock price greatly appreciated after time of
injury).

J.C. Penney contends that prejudgment interest is
inequitable because Hameed=s
pre-suit demand was excessive or, alternatively, that its settlement offer B which was in excess of Hameed=s recovery B
should toll any interest accrual.  Hameed
disputes making an excessive demand and contends that cases which have
previously disallowed prejudgment interest did so to avoid a windfall B which under the facts of this case is
not a concern.

Our review of the trial court=s decision is hampered by the absence
of any findings of fact.  The trial court=s judgment does not indicate why
prejudgment interest was not included, and Hameed made no request for findings
of fact and conclusions of law.  In the
absence of any request, we must imply that the trial court made all the
necessary findings to support its judgment. 
See Holt Atherton Indus. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992).

The trial court could have determined that Hameed=s contractual damages and its award of
attorney=s fees
and court costs were adequate compensation or that an award was inequitable
because Hameed=s
contractual damages were approximately 20% of J.C. Penney=s last settlement offer.  We also note that Hameed filed suit on
February 1, 2001, but that the trial did not start until August 23, 2004.  The record does not indicate why the trial
was delayed, but the trial court could have concluded that the circumstances
surrounding this delay made a prejudgment interest award inequitable.  Consequently, we cannot say that the trial
court abused its discretion.  Hameed=s second issue is overruled.  

C. Did the Trial Court Err When It Awarded
Attorney=s Fees?

The trial court awarded Hameed attorney=s fees of $15,725.  J.C. Penney challenges this award with two
issues, contending that Hameed=s
demand was excessive and, therefore, that it was entitled to no fees or,
alternatively, that the amount of the trial court=s
award was excessive.  A trial court=s award of attorney=s fees is reviewed for an abuse of
discretion.  First Fed. Sav. &
Loan Ass=n of San Antonio v. Ritenour,
704 S.W.2d 895, 902 (Tex. App.CCorpus
Christi 1986, writ ref=d
n.r.e.). 








1.  Excessive
demand.

J.C. Penney spends considerable time and effort
criticizing the current interpretation of Tex.
Civ. Prac. & Rem. Code Ann. ''
38.001-.002 (Vernon
1997) because it puts too light a burden on plaintiffs to prove presentment and
too high a burden on defendants to prove tender.  J.C. Penney also suggests that it made a
sufficient tender to preclude any attorney=s
fee award when it offered to settle the entire case for $35,000.  We will not depart from well-settled
precedent in our review of this case. 
Nor may we consider J.C. Penney=s
tender argument because it was not presented to the trial court or identified
as an issue presented for review.  Tex. R. App. P. 33.1(a), 38.1(e).

Several intermediate courts of appeal have found that
the excessive demand doctrine applies to Section 38.001 even though the statute
by its express terms does not explicitly address excessive demands.[5]  We agree with their reasoning.  However, the excessive demand doctrine is an
affirmative defense.  J.C. Penney was
obligated to plead it, prove it, and obtain findings of fact on its essential
elements.  See Pratt v. Trinity
Projects, Inc., 26 S.W.3d 767, 769 (Tex. App.CBeaumont
2000, pet. denied); Essex Crane Rental Corp. v. Striland Const. Co., 753
S.W.2d 751, 758 (Tex. App.CDallas
1988, writ denied).  J.C. Penney did none
of the above.

J.C. Penney=s
answer makes no reference to the excessive demand doctrine.  J.C. Penney argues that it was not required
to plead excessive demand because the question of attorney=s fees was submitted to the trial court
and not the jury.  Tex. R. Civ. P. 94 makes no exception
for bench trials. 

J.C. Penney was not relieved of its obligation to plead excessive
demand as an affirmative defense merely because the trial court acted as the
finder of fact on attorney=s
fees.








J.C. Penney next points to a memorandum of law it
filed on October 13, 2004.  That
memorandum advances several arguments why an award of attorney=s fees would be improper, and it
includes references to the excessive demand doctrine.  Whether such a memorandum can ever satisfy
Rule 94 we need not decide today.  The
purpose of Rule 94 is to give the opposing party notice of the defensive issues
to be tried.  Land Title Co. of
Dallas, Inc. v. F.M. Stigler, Inc., 609 S.W.2d 754, 756 (Tex. 1980). 
J.C. Penney=s
memorandum was filed after the jury trial and simultaneously with the parties= joint stipulation of facts B which was the last evidence tendered
to the court.  That memorandum was in the
nature of closing argument. 
Consequently, it cannot satisfy Rule 94=s
essential purpose and was insufficient to preserve this issue.

Even if this issue was properly pleaded, J.C.
Penney did not obtain a reporter=s
record.  We appreciate that Hameed=s request for attorney=s fees was determined by the trial
court and not the jury and that the trial court heard no additional testimonial
evidence but was given a written stipulation of facts that is in the clerk=s record.  This stipulation constitutes what Hameed=s counsel would have testified to if he
had been called to the stand, and it includes his description of the parties= settlement demands and offers.  Counsel=s
testimony is highly relevant to any attorney=s
fee analysis, but the excessive demand doctrine requires consideration of more
than this because the dispositive inquiry is whether the claimant acted
unreasonably or in bad faith.  Wayne
v. A.V.A. Vending, Inc., 52 S.W.3d 412, 418 (Tex. App.CCorpus Christi 2001, pet. denied).  J.C. Penney makes several references to
Hameed=s
position at trial.  However without a
reporter=s record,
we cannot determine what position Hameed took at trial or whether, in light of
all the evidence, this was unreasonable or in bad faith.

Finally, J.C. Penney did not request or obtain
findings of fact.  We have previously
refused to reverse the trial court=s
decision to not award prejudgment interest because, in the absence of any
findings of fact, we must presume that the court made all necessary findings to
support its decision.  See Heine,
835 S.W.2d at 83.  For this same reason,
we must also assume that the trial court either determined that J.C. Penney did
not properly plead excessive demand as an affirmative defense or that Hameed=s demand was not unreasonable or in bad
faith.  We recognize that there is some
inconsistency between the potential conclusion that prejudgment interest was
not awarded because of the discrepancy between Hameed=s
last demand and the jury=s
verdict and the potential conclusion that attorney=s
fees were appropriate because Hameed=s
demand was not unreasonable or in bad faith. 
However, in each instance, these are only one of the possible
conclusions the trial court could have reached. 
Because we must presume that the trial court made any necessary findings
to support its judgment, we must also presume that the trial court avoided
conflicting findings.  The potential
findings would allow for this possibility. 
J.C. Penney=s first
issue is overruled.

2. Amount of fees.








J.C. Penney next contends that the trial court=s award of $15,725 in fees was
excessive.  J.C. Penney correctly notes
that courts are to consider the following factors when determining the amount
of reasonable attorney=s
fees:  (1) the time and labor required,
novelty, and difficulty of the question presented and the skill required to
properly perform the legal service; (2) the likelihood that the acceptance of
employment precluded other employment by the lawyer; (3) the fee customarily
charged in the locality for similar services; (4) the amount involved and the
results obtained; (5) the time limitations imposed by the client or by the
circumstances; (6) the nature and length of the professional relationship with
the client; (7) the experience, reputation, and ability of the lawyer
performing the services; and (8) whether the fee is fixed or contingent.  See Arthur Andersen & Co. v. Perry
Equip. Corp., 945 S.W.2d 812, 818 (Tex.
1997).

When making this inquiry, the court is free to
look at the entire record, the evidence presented on reasonableness, the amount
in controversy, the common knowledge of the participants as lawyers and judges,
and the relative success of the parties. 
Garrod Invs., Inc. v. Schlegel, 139 S.W.3d 759, 767 (Tex. App.CCorpus Christi 2004, no pet.).  Because J.C. Penney did not obtain a reporter=s record, we cannot conclude the trial
court abused its discretion.  First, we
do not have access to most of the evidence that the trial court was entitled to
consider.  Second, without findings of
fact, we cannot determine what conclusions the trial court reached on any of
the factors guiding an award of attorney=s
fees.  J.C. Penney=s
second issue is overruled.

D. Did the Trial Court Properly Tax Court
Costs?

J.C. Penney=s
third issue challenges the trial court=s
award of $1,860 in taxable costs, including a $1,325 mediator fee.  J.C. Penney contends that, because the
parties voluntarily attended mediation as opposed to being ordered to do so by
the court, it was improper to include Hameed=s
share of the mediator=s
fee in the court cost award.

The assessment of costs is within the trial court=s discretion.  Allen v. Crabtree, 936 S.W.2d 6, 7
(Tex. App.CTexarkana
1996, no writ).          Tex. Civ. Prac. & Rem. Code Ann. ' 31.007(b) (Vernon 1997) authorizes trial courts to
assess as taxable costs items such as filing and service fees, court reporter
fees, and Asuch
other costs and fees as may be permitted by these rules and state statutes.@








J.C. Penney concedes that, if the trial court had
ordered the parties to attend mediation, the mediator=s
fee would be taxable.  It contends,
however, that, because the parties voluntarily agreed to attend mediation, the
mediator=s fee is
comparable to the costs of a surveyor jointly hired by the parties to help
resolve a property dispute.  The Fort Worth Court
held that, in this instance, the surveyor=s
charges were not taxable at least partially because the surveyor=s services were unrelated to any court
responsibility. See City of Hurst v. City of Colleyville, 501
S.W.2d 140, 143 (Tex. Civ. App.CFort
Worth 1973, writ ref=d
n.r.e.).  J.C. Penney argues that the
mediator in this case similarly had no responsibility to the court.

We believe that the legislature has given trial
courts the discretion to assess even a voluntarily chosen mediator=s fee as taxable costs.  The legislature has instructed Texas courts that it is
state policy Ato
encourage the peaceable resolution of disputes, . . . and the early settlement
of pending litigation through voluntary settlement procedures.@ 
Tex. Civ. Prac. & Rem. Code
Ann. ' 154.002
(Vernon 2005).  The legislature has also
instructed courts that A[i]t
is the responsibility of all trial and appellate courts and their court
administrators to carry out the policy under Section 154.002.@ 
Tex. Civ. Prac. & Rem. Code
Ann. ' 154.003
(Vernon 2005).

Allowing trial courts the discretion to include
the mediator=s fee in
the taxable costs, even though the parties chose themselves to attend
mediation, is consistent with Section 31.007(b) and the legislature=s stated policy of encouraging
mediation.  Because this was a
discretionary decision and the record does not support a finding that the court
abused its discretion, J.C. Penney=s
third issue is overruled.

                                                         IV.
Holding

The trial court=s
judgment is affirmed.

 

 

RICK STRANGE

JUSTICE

 

February 8, 2007

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











     [1]The
agreement was modified in 1996, but that modification did not impact the issues
raised by this appeal.





     [2]J.C.
Penney=s motion and reply combine elements of both a
traditional and no-evidence motion for summary judgment.  It is unnecessary for us to distinguish
between the two types of motions because the outcome would be the same.





     [3]Courts
have also held that a summary judgment motion B if
directed at the element of one cause of action B can be
effective against even subsequently pleaded claims if they share that same
element.  See Wortham v. Dow Chem. Co.,
179 S.W.3d 189, 202 (Tex.
App.CHouston [14th Dist.] 2005, no pet.); Lampasas v.
Spring Center, Inc., 988 S.W.2d 428, 435-37 (Tex. App.CHouston [14th Dist.] 1999, no pet.).





     [4]We
express no opinion on whether an inducement to encourage continued contractual
performance or to avoid exercising a contractual right could constitute
fraudulent inducement in appropriate circumstances.





     [5]See,
e.g., Fire & Cas. Ins. Co. of Conn. v. Buslease, Inc., No.
08-01-00277-CV, 2002 WL 1301570 (Tex. App.CEl Paso
June 13, 2002, pet. denied) (not designated for publication); Wayne v.
A.V.A. Vending, Inc., 52 S.W.3d 412, 418 (Tex. App.CCorpus Christi 2001, pet. denied); Pennington v.
Gurkoff, 899 S.W.2d 767, 772 (Tex. App.CFort
Worth 1995, writ denied).