Jeff and Robyn **SHKOLNICK**,
Appellants,

v.

**COASTAL FUMIGATORS, INC.,**
**d/b/a End–O–Pest, Appellee.**

No. 01–04–00405–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 23, 2005.

Evin G. Dugas, Dugas & Inselmann, Austin, TX, for Appellants.

Margaret Horton, Smith, Underwood & Perkins, LeAnn Wainscott Diamond, Friedman & Feiger, L.L.P., Dallas, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

This is an appeal from a summary judgment rendered in favor of appellee, Coastal Fumigators, Inc. d/b/a End–O–Pest ("Coastal"). Appellants, Jeff and Robyn Shkolnick ("the Shkolnicks"), filed a suit for damages arising out of an inspection by Coastal of a house that they were, at the time, in the process of purchasing. Coastal filed a traditional and no-evidence motion for summary judgment, which the court granted. In two issues, the Shkolnicks contend that the trial court erred in (1) entering final judgment disposing of all their claims because one of their claims brought under the Deceptive Trade Practices Act ("DTPA") was not presented in Coastal's motion for summary judgment and (2) granting summary judgment because there was an issue of material fact

as to Coastal's alleged representations concerning the characteristics and quality of its services. We affirm.

## BACKGROUND

On May 4, 2000, the Shkolnicks entered into an earnest money contract to purchase a house located at 411 Trails Court, Houston, Texas. On May 9, 2000, Coastal sent an employee, Chuck Domel, to perform a Real Estate Transaction Inspection to inspect the house for wood-destroying insects.[1] According to Jeff Shkolnick, after the inspection, Domel told him that he did not see any problems, he thought everything was good, and there was nothing to be concerned about. Coastal provided the Shkolnicks with a Texas Official Wood Destroying Insect Report ("WDIR"), which stated that the scope of the inspection was limited to "those parts of the structure(s) that are visible and accessible at the time of the inspection." The report found no visible evidence of drywood termite infestation. Shortly thereafter, the Shkolnicks completed their purchase of the house.

In the spring of 2002, a handyman, hired by the Shkolnicks, discovered termites upon removing wood from a windowsill. In May 2002, a pest control company confirmed the presence of drywood termites.

The Shkolnicks sued Coastal for violations of the DTPA.[2] The Shkolnicks alleged that Coastal violated the DTPA when it "represented that its services had characteristics and qualities it did not."[3] Coastal moved for a traditional and a no-evidence summary judgment on all of the Shkolnicks' claims. In its motion, Coastal claimed that there was no material fact issue as to whether Coastal made any false representations to the Shkolnicks. The trial court granted Coastal's motion for summary judgment. On February 20, 2004, the trial court rendered a take-nothing judgment against the Shkolnicks. This appeal followed.

## SUMMARY JUDGMENT

In their first issue, the Shkolnicks contend that the trial court erred in entering a final judgment against them because one of their DTPA claims was not presented in Coastal's motion for summary judgment. The Shkolnicks assert that their claim, under section 17.46(b) of the DTPA, consists of two claims: the first under section 17.46(b)(5) regarding characteristics of Coastal's services, and the second under section 17.46(b)(7) regarding the particular quality of Coastal's services. *See* TEX. BUS. & COM.CODE ANN. § 17.46(b) (Vernon Supp.2004–2005). In their second amended petition, the Shkolnicks alleged, "END–O–PEST has violated the Texas Deceptive Trade Practices Act and said

1. Structural Pest Control Board Regulation section 599.5 states, in pertinent part, "[F]or purposes of a Real Estate Transaction Inspection (§ 599.6) only, there must be visible evidence of active infestation in the structure or visible evidence of a previous infestation in the structure with no evidence of prior treatment to recommend a corrective treatment. The inspection must be conducted so as to ensure examination of visible accessible areas in accordance with accepted procedures. While such an examination may reveal Wood Destroying Insects, there are instances when concealed infestations and/or damage may not be discovered. Examinations of inaccessible or obstructed areas are not required."

2. Although the Shkolnicks' petition initially included a negligence theory of recovery, this cause of action was later nonsuited.

3. The Shkolnicks alleged that these representations included: "that they could locate an active infestation; that there was no active infestation; that the inspection would use industry tools; that the inspection would use industry standards; and that the inspection would be complete."

violations are the producing cause of damages to JEFF and ROBYN SHKOLNICK. Specifically, END–O–PEST represented that its services had characteristics and qualities it did not. . . ." Appellants assert the one reference to "characteristics" in their petition provided sufficient notice to Coastal that a 17.46(b)(5) claim was asserted as well. The Shkolnicks separate these claims in their briefs on appeal and argue that Coastal, in its motion for summary judgment, never challenged the Shkolnicks' DTPA claim under 17.46(b)(5) regarding Coastal's representations that their services had characteristics that they did not have.

In support of their summary judgment motion, Coastal alleged

[t]here is no evidence and Plaintiffs have produced no evidence that Coastal committed *a wrongful act.* There is no evidence and Plaintiffs have produced no evidence that Coastal made any false representations to Plaintiffs regarding the quality of their services in violation of Tex. Bus. & Com.Code § 17.46(b)(7) as alleged above. Further, there is no evidence and Plaintiffs have produced no evidence that Coastal's inspection violated the implied warranty of good and workmanlike service by failing to perform to industry standards.

(emphasis added).

The issue we are thus presented with is whether Coastal's reference to "a wrongful act" sufficiently challenged the Shkolnick's claim under section 17.46(b)(5) that Coastal's services had characteristics that it did not.[4] In the summary judgment motion,

Coastal listed the elements that the Shkolnicks had to prove to prevail on their DTPA claims. One element Coastal listed was that "the defendant committed a wrongful act, which consisted of the following: (a) a false, misleading, or deceptive act or practice that is specifically enumerated in the 'laundry list' of Business & Commerce Code section 17.46(b) and that was relied on by the plaintiffs to the plaintiffs detriment. . . ." Coastal's use of the phrase "a wrongful act" encompassed any "act or practice that is specifically enumerated" as a laundry list violation. When Coastal asserted in their motion that "[t]here is no evidence and Plaintiffs have produced no evidence that Coastal committed a wrongful act" and that the "claims fail as a matter of law because Coastal can disprove the element that defendant committed a wrongful act," these challenged both the section 17.46(b)(5) and section 17.46(b)(7) claims.

 We next consider whether these statements sufficiently stated the grounds upon which summary judgment may be granted. The term "grounds" refers to the reasons entitling the movant to summary judgment. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 339 n. 2 (Tex.1993). Grounds for summary judgment may be stated concisely, without detail and argument. *Molina v. Kelco Tool & Die, Inc.,* 904 S.W.2d 857, 861 (Tex. App.-Houston [1st Dist.] 1995, writ denied). Here, Coastal stated concisely that they were entitled to summary judgment because they did not commit a wrongful

---

4. Coastal filed a "Supplemental Briefing" to their motion for summary judgment clarifying that they challenged both laundry list violations. However, the Texas Supreme Court has made it clear that "a motion for summary judgment must itself expressly present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the motion. In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence." *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex. 1993). Thus, this Court is limited to reviewing the grounds presented in Coastal's motion for summary judgment.

act, that is they did not violate any laundry list provisions of the DTPA. Because we conclude that Coastal addressed both the section 17.46(b)(5) and section 17.46(b)(7) claims in the motion for summary judgment, we overrule the Shkolnick's first issue.

## SUMMARY JUDGMENT EVIDENCE

In their second issue, the Shkolnicks contend that the trial court erred in granting summary judgment because there was an issue of material fact regarding the section 17.46(b)(5) and section 17.46(b)(7) claims. Specifically, the Shkolnicks argue that Coastal represented that its services had characteristics and qualities it did not, including (1) that it could locate an active infestation; (2) that there was no active infestation; (3) that its inspection would use industry tools; (4) that its inspection would use industry standards; (5) that its inspection would meet industry standards; and (6) that its inspection would be complete.

## Standard of Review

■■ A party moving for a traditional summary judgment has the burden of proving that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 548 (Tex.1985); *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 670 (Tex.App.-Houston [1st Dist.] 1996, no writ). When deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d. at 548–49. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* at 549.

■ In a no-evidence motion for summary judgment, the movant must specifically state the elements as to which there is no evidence. Tex.R. Civ. P. 166a(i). The burden then shifts to the non-movant to produce evidence that raises a fact issue on the challenged elements. *Id.* When reviewing the grant of a no-evidence summary judgment, we assume all evidence favorable to the non-movant is true and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). A no-evidence summary judgment may not be properly granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact. Tex.R. Civ. P. 166a(i). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003) (quoting *Kindred v. Con/Chem. Inc.*, 650 S.W.2d 61, 63 (Tex.1983)). More than a scintilla of evidence exists if it would allow reasonable and fair minded people to differ in their conclusions. *Id.*

The elements of a DTPA claim are (1) the plaintiff is a consumer; (2) the defendant engaged in a false, misleading, or deceptive act; (3) the consumer relied on that act to the consumer's detriment; and (4) the act constituted a producing cause of the plaintiff's damages. *See* Tex. Bus. & Com.Code Ann. §§ 17.46, .50 (Vernon 2002 & Supp.2004–2005); *see Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995). A mere representation that services are of a particular quality is not enough for a statement to be actionable under the DTPA. *See* Tex. Bus. & Com.Code Ann. § 17.46 (Vernon Supp. 2004–2005). Rather, the act must be false, misleading, or deceptive. *Id.* For a repre-

sentation regarding the characteristics or quality of a defendant's services to be actionable under section 17.46(b)(5) and section 17.46(b)(7), the defendant's representation that its services have characteristics or a particular quality must be shown that they are *not* of that characteristic or quality. *Id.* §§ 17.46(b)(5), (7). Because Coastal challenged the false, misleading, or deceptive act in its motion for summary judgment, the Shkolnicks had to create a fact issue that there was a representation which was false, misleading, or deceptive. *See id.*

### Coastal's Alleged Representation

We first address whether Coastal made any representations to the Shkolnicks. Coastal argues that (1) the Shkolnicks admitted that they had no memory of any oral representations made by Coastal; (2) any comments made by Coastal inspectors were merely opinions; and (3) the only written representation made by Coastal, the WDIR, was not reviewed by the Shkolnicks until *after* they closed on their house, thereby precluding their ability to rely on the WDIR to their detriment.[5]

However, the Shkolnicks point to the Coastal inspector's statements made to Jeff Shkolnick on the day of the inspection. Jeff Shkolnick testified during his deposition that the Coastal inspector made express oral representations to him that (a) he didn't see any problems, (b) he thought everything was good, and (c) there was nothing for Shkolnick to be concerned

about. The Shkolnicks also allege that Coastal impliedly represented that Coastal was "competent and capable of inspecting a home for termites." Based on the deposition testimony of Jeff Shkolnick regarding statements by the Coastal inspector, we conclude that there was some evidence to create a fact issue on whether representations were made to the Shkolnicks.

### False, Misleading or Deceptive Representation

■ We next address whether Coastal's representations were false, misleading, or deceptive. The Shkolnicks complain that Coastal represented (1) that it could locate an active infestation; (2) that there was no active infestation; (3) that its inspection would use industry tools; (4) that its inspection would use industry standards; (5) that its inspection would meet industry standards; and (6) that its inspection would be complete. To create a fact issue on whether these representations are false, misleading, or deceptive, the Shkolnicks must first create a fact issue that termites were present when Coastal inspected the house, and secondly that Coastal's inspection failed to meet the industry standards.

To create a fact issue regarding the existence of termites in May 2000 during Coastal's inspection, the Shkolnicks offer the affidavit of Dr. Ted Granovsky, Ph.D., B.C.E. Dr. Granovsky received his Ph.D. in entomology and is a certified urban and industrial entomologist. Dr. Granovsky

5. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. TEX.R. CIV. P. 166a(c). Because Coastal did not raise the reliance element as a ground in its motion for summary judgment, we do not address this argument on appeal. *McConnell*, 858 S.W.2d at 341 (stating that a "motion must stand or fall on the grounds expressly presented in the motion"); *Roberts v. Southwest Tex. Methodist Hosp.*, 811 S.W.2d 141, 146 (Tex.App.-San Antonio 1991, writ denied) ("When a motion for summary judgment asserts grounds A and B, it cannot be upheld on grounds C and D, which were not asserted, even if the summary judgment proof supports them and the responding party did not except to the motion."). Coastal only challenged the false, misleading or deceptive act in its motion for summary judgment.

states that "[d]rywood termites normally require 3 to 5 years of time to develop their colonies to the point where they can cause damage evident in a structure." He then summarily concludes that "[i]n consideration of the known biology of drywood termites, the extended time needed to develop their colonies, the slowness with which damages are caused by drywood termites, it is both scientifically reasonable and highly probable that the drywood termites in the Shkolnicks home were both present and evident at the time of the inspection by Coastal Fumigators, Inc. d/b/a END-O-PEST, and could have been encountered." Given Dr. Granovsky's educational background and experience, we conclude this was sufficient to create a fact issue that termites were present at the Shkolnicks in May 2000.

We next address whether Coastal adhered to the industry standards during the inspection of the Shkolnick's house. The Shkolnicks list multiple points in their brief as evidence to raise a fact issue on whether Coastal failed to adhere to the industry standard: (1) Structural Pest Control Board Rule section 599.5(a); (2) Structural Pest Control Board Rule section 599.5(c) states, "The inspector shall describe structure(s) inspected and include the following . . . inaccessible or obstructed areas;" (3) the deposition testimony of Chuck Domel, an inspector for Coastal, indicating that sounding the wood is part of the procedure for inspecting drywood termites; (4) Domel's testimony on inspecting only accessible areas unless he thinks there's a problem in an area out of his reach; (5) Domel's testimony on not identifying everything above 8 feet as an inaccessible area on the WDIR; (6) Theodore Granovsky's conclusion in his affidavit that Domel's lack of use of a ladder in his inspection of the Shkolnicks' house indicated the lack of proper equipment and effective procedures for a thorough and profes-

sional inspection for termites; (7) Domel's testimony that he never had a ladder; (8) Domel's testimony that he does not need a ladder; (9) Domel's testimony that drywood termite infestations do not only occur below eight feet on every structure; (10) Domel's testimony that the eaves on the Shkolnicks' house were visually accessible, but that eaves above eight feet and out of the reach of his mallet are inaccessible; and (11) WDIR indicated that the eaves were not marked as an "inaccessible" area by Domel.

Structural Pest Control Board Regulation section 599.5(a) states the applicable industry standard regarding inspections. It provides that the "inspection must be conducted so as to ensure examination of visible accessible areas in accordance with accepted procedures." The only evidence offered by the Shkolnicks to suggest Coastal did not adhere to this standard is the affidavit of Dr. Granovsky. Dr. Granovsky states "the inspector DID NOT utilize a ladder during his inspection of the property in question directly indicates the lack of proper equipment and effective procedures needed for a complete, thorough and professional inspection of the structure for termites." No where does Dr. Granovsky indicate the inspection failed to meet industry standards. Structural Pest Control Board Regulation section 599.5(a) requires the inspection to examine "visible accessible areas in accordance with accepted procedures." Dr. Granovsky did not state that having a ladder during a termite inspection constitutes "accepted procedures," nor did he explain how having the ladder would lead to a discovery of termites concealed under a windowsill after an examination of the "visible accessible areas." We conclude that the Shkolnicks fall short of providing more than a scintilla of evidence that Coastal failed to adhere to industry standards.

Assuming without deciding that Coastal had not performed their inspection in accordance with industry standards, the Shkolnicks did not present evidence that even if the termites that were found in their home in the spring of 2002 were present in May 2000 when Coastal performed its inspection, the termites would have been discovered by Coastal had it conducted its investigation in accordance with industry standards. The Shkolnicks discovered the termite damage only after wood was removed from a windowsill. Without evidence indicating that Coastal should have known of the presence of the termites in May 2000 by an examination of visible and accessible areas, the Coastal inspector's comments that "he didn't see any problems," "he thought everything was good," and "there was nothing to be concerned about," do not support the element of a wrongful act by Coastal, that is a false, misleading, or deceptive act.

Considering the evidence in the light most favorable to the Shkolnicks, we hold that there is no evidence to raise an issue of fact that Coastal made false, misleading or deceptive representations that its services had characteristics and qualities that they did not. Because the Shkolnicks would carry the burden of proving these misrepresentations at trial, but failed to produce more than a scintilla of evidence on that element in response to Coastal's traditional and no-evidence motion for summary judgment, the trial court properly granted Coastal's motion for summary judgment. Accordingly, we overrule the Shkolnicks' second issue.

## CONCLUSION

We affirm the judgment of the trial court.