William R. WEBER, John C. Hannegan, and HMW Leasing Company, a Missouri General Partnership, Plaintiffs/Respondents,

v.

Jane R. MOERSCHEL, Personal Representative of the Estate of Rollin J. Moerschel, Deceased, Defendant/Appellant.

No. ED 93652.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 15, 2010.

Daniel K. Barklage, St. Charles, MO, for Plaintiffs/Respondents.

Scott Simpson, Jayson B. Lenox, John C. Maxwell, St. Charles, MO, for Defendant/Appellant.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Jane Moerschel, Personal Representative of the Estate of Rollin J. Moerschel, Deceased (Appellant), appeals from the trial court's judgment on the Amended Claim Relating to the Estate of Rollin J. Moerschel, Deceased, Against the Personal Representative Jane R. Moerschel filed by William R. Weber (Weber), John C. Hannegan (Hannegan) and HMW Leasing Company, a Missouri General Partnership (HMW or the partnership) (collectively Respondents), requesting a declaration of rights and accounting concerning the partnership interest of Rollin J. Moerschel (Moerschel) as agreed to by the parties in the Restated Partnership Agreement (partnership agreement) dated June 1, 1987; and on Appellant's Verified Petition for Discovery of Assets (Petition) and Motion for Authority to Continue Business (Motion). We reverse and remand.

*Factual and Procedural Background*

At the time of Moerschel's death on June 12, 2007, Moerschel, Weber and Hannegan were partners in HMW. Moerschel owned 20% of the partnership; Hannegan, 60%; and Weber, 20%. The single asset of the partnership is a 3–story office building, built in 1891 and renovated in the early 1980s, used for the law offices of the law practice of Weber, Hannegan, and about eleven other lawyers and fifteen support staff. On February 6, 2008, Appellant filed the Motion and Petition, seeking a declaration of rights, interests and entitlements between the parties based on the partnership agreement. On April 18, 2008, Respondents filed their "Claim Relating to the Estate of Rollin J. Moerschel,

Deceased, Against the Personal Representative Jane R. Moerschel—Breach of Contract—Specific Performance—Damages" (Claim). On April 30, 2008, Respondents filed an amended claim (Amended Claim) adding a third count seeking a declaratory judgment and asking for a determination of their rights and liabilities under the partnership agreement.

After a hearing on the merits the trial court entered a Judgment requiring the Respondents to buy out Moerschel's 20% partnership interest. Respondents hired Real Estate Analysts Limited to prepare an appraisal of the real estate, and Appellant consented to that appraisal. Commercial Real Estate Appraiser Michael Green (Green) performed the appraisal of the partnership property, the appraised value of which was $1,225,000. This appraisal was as of the date of Moerschel's death, as required by the partnership agreement. Green testified in detail about how he went about performing the appraisal. Appellant's 20% share of the appraised value of the property is $245,000.

After Green's testimony, Weber testified, over Appellant's continued objections, about the updates and repairs he would like to make to the property, and how much such updates and repairs would cost. The court accepted Weber's testimony and deducted $225,000 from the appraised value of the property, thereby reducing Appellant's share to $200,000.[1]

The trial court ordered Respondents to make three equal payments to Appellant of one-third (1/3) of the total judgment amount; the first within six months of the judgment, the second within one year of the judgment, and the third within two years of the judgment. The trial court also ordered that there shall be no interest on the first payment, but that interest on the second and third payments shall begin accruing three months after the date of judgment, at 7% per annum. These orders were made in accordance with the terms of the partnership agreement's buy-out clause, with the exception that the clause states that payments will be made, as outlined above, from the date of retirement (death), as opposed to from the date of judgment. The trial court denied Appellant's Motion, finding that there was no authority set forth in the partnership agreement for a deceased partner's estate's personal representative to assume the deceased's partnership status.

This appeal follows.

## Points on Appeal

In her first point, Appellant maintains that the trial court erred in deducting the $225,000 cost of updates and repairs to the building from the real estate appraisal of $1,225,000 because the partnership agreement was misinterpreted and the parties' intentions were not followed, in that the partnership agreement does not provide for a reduction in the appraised value for building repairs.

In her second point, Appellant claims that the trial court erred in the timing of the buyout payments and the interest thereon because the express language of the partnership agreement is controlling, in that the partnership agreement sets forth a clear and unambiguous payment and interest schedule that uses Moerschel's date of death to determine when the buyout payments are due and when interest begins to accrue.

---

1. Hannegan and Weber were entitled to a credit of $12,000 already paid to leave a balance of $188,000.

### Standard of Review

 The standard by which this Court reviews a declaratory judgment action is the same as in any other court-tried case. *Scott v. Ranch Roy–L, Inc.*, 242 S.W.3d 401, 405 (Mo.App. E.D.2007). The standard of review in an appeal from a court-tried case is governed by *Murphy v. Carron.*[2] *G.H.H. Investments, L.L.C. v. Chesterfield Management Associates, L.P.*, 262 S.W.3d 687, 691 (Mo.App. E.D.2008). The judgment will be affirmed unless it is against the weight of the evidence, there is insufficient evidence to support it, or it erroneously declares or applies the law. *Id.* We defer to the factual findings of the trial court, which is in a superior position to assess credibility. *Id.* However, this Court independently evaluates the trial court's conclusions of law. *Id.* Contract interpretation is an issue of law, which we review *de novo* on appeal. *Id.*

### Discussion—Point I

Appellant maintains that there is no provision in the contract providing for a reduction in the appraised value of the property for building repairs. We agree.

Article Nineteen of the partnership agreement provides: "A partner may retire from the Partnership upon the following terms: A. If a Partner dies or becomes disabled from engaging regularly in the practice of law...."

Article Twenty provides:

A. The value of a retiring Partner's interest in the Partnership property, adjusted to reflect appraised values as provided in this Article, shall be the sum of his capital account and his proportionate share of accrued net income of the Partnership to the date of his retirement, unless included in his drawing account.

B. All Partnership assets shall be valued at book value except the appraised value of real property and improvements thereon, if any, shall be substituted for book value. The difference between the total appraised value of real property and improvements thereon, if any, and its total depreciated book value shall increase or decrease the Partners' capital accounts in the proportions of their interests in profits or losses of the partnership specified in Article Eight. *The appraised value shall be determined as of the date of retirement of the retiring Partner and shall be made by an appraiser selected by agreement between the continuing Partners and the retiring Partner. If they cannot agree on an appraiser, the appraisal shall be made in accordance with the rules of the American Arbitration Association then in effect* ...

[Emphasis added.]

 " 'The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention.' " *G.H.H. Investments*, 262 S.W.3d at 692, quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). Here, the partnership agreement is clear in its language on how the value of the partnership's real estate asset is to be ascertained, when the time comes to buy out a partner's share upon his death or retirement: "The appraised value *shall be* determined as of the date of retirement of the retiring partner and *shall be* made by *an appraiser* selected by agreement between the continuing partners and the retiring partner." [Emphasis added.]

The use of the word "shall" is compulsory. The use of the appraiser's value in determining Appellant's buyout percentage

**2.** 536 S.W.2d 30, 32 (Mo.banc 1976).

is mandatory. There is no language in the agreement stating that the appraised value may be reduced by a partner's opinion testimony regarding deductions for repairs and updates. No such intent may be read into the contract, either, because the agreement designates itself a fully integrated agreement. Article Sixteen explicitly provides:

> This partnership Agreement contains the entire understanding between the partners and supersedes any prior written or oral agreement between them respecting the within subject matter. *There are no representations, agreements, arrangements, or understandings, oral or written, between and among the Partners hereto relating to the subject matter of this Partnership Agreement which are not fully expressed herein.*

[Emphasis added.]

The fact that the several paragraphs discussing appraised value do not include any language regarding deductions for speculative future improvements suggests that "appraised value" means simply the plain and ordinary meaning of "appraised value," i.e., the value assigned to the property by a professional real estate appraiser. An "appraiser" is an "impartial person who estimates the value of something, such as real estate, jewelry, or rare books." *Black's Law Dictionary* 97 (7th ed.1999). Green, who was hired by Respondents, incidentally, submitted a fifty-page comprehensive appraisal of the property at issue. Respondents did not contest that appraisal. Rather, Green testified and submitted his appraisal into evidence, without objection by Respondents. Weber then testified about his opinion of the property's fair market value, opining that updates and repairs needed to be made to the property, and that $40 per square foot of the 9,700 square foot property should be deducted from the appraisal, to reach fair market value, in the event Respondents would sell the property in the future. The trial court accepted this testimony and found that the purported fair market value of the property was $1,000,000, after deducting $225,000 from the appraiser's value.

This was error on the part of the trial court, because the partnership agreement specifically dictates that the appraiser shall set the value. The contract says nothing about "fair market value," which is the "price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction; the point at which supply and demand intersect." *Id.* at 1549. However, the trial court found that "[b]ased on the testimony adduced the Court would deduct the sum of $225,000 from the appraisal for a net fair market value on the date of Rollin J. Moerschel's death of $1,000,000." This finding is contrary to the terms of the contract.

We note that if Respondents wanted Green to take into account repairs and updates that needed to be made to the property in an effort to cause him to lower his appraisal of the property's value, then they should have done so, or rejected Green's appraisal and sought another appraiser, or at the least objected at trial to Green's conclusions before they were submitted into evidence and Green testified as to his appraisal. But they did none of these things.

Respondents argue that the trial court's $225,000 deduction from Green's valuation was "within the range established by the evidence." The "evidence" of which Respondents speak is Weber's testimony about the cost of repairs and updates Weber believes should be deducted from Green's appraisal in order to reach fair market value. This argument presupposes

that a partner is allowed to testify and give his conclusion as to the value of the property. The contract does not provide for such, and in fact its mandatory language that the parties shall agree to an appraiser who shall give his appraised value prohibits any evidence as to the value of the property other than the appraiser's.

■ Respondents also assert that the trier of fact is not required to adopt the exact testimony of any witness when assessing damages or determining value. On the contrary, the trier of fact cannot alter the specific contractual appraisal method sanctioned by the clear terms of the integrated partnership agreement. Contrary to Respondents' argument, the trial court is bound by the appraiser's valuation when the parties are constrained by the terms of a binding, valid contract setting forth that the appraiser decides the value of the property. "Where a contract speaks plainly and unequivocally, the language used must be enforced as written." *Kramer v. Fallert*, 628 S.W.2d 671, 674 (Mo.App. E.D.1981). The parties to this partnership agreement are lawyers, and they drafted this agreement themselves to govern themselves and their partnership, specifically designating an independent third party professional appraiser to determine the value of the property, presumably to avoid conflicting opinions as to the value of the property between the retiring partner and the continuing partners.

Green's comprehensive appraisal specifies that the appraisal value of the property, $1,225,000, was determined as of the date of Moerschel's retirement or death, i.e., June 12, 2007, which the partnership agreement specifically requires. Pursuant to the terms of the agreement, we find said appraisal value stands. The trial court exceeded the terms of the contract when it deducted the cost of updates and repairs from the appraised value of the building.

For the foregoing reasons, Point I is granted.

### Discussion—Point II

■ Appellant maintains that since the partnership agreement provides that the amounts due to her were to be payable six months, one year, and two years, respectively, from the date of Moerschel's death, and not from the date of judgment, as the trial court held, that she should receive interest on the money from those dates. We disagree.

■ Generally, prejudgment interest on unliquidated claims is not recoverable, for the reason that where the person liable does not know the amount he owes, he should not be considered in default because of failure to pay. *Watters v. Travel Guard Intern.*, 136 S.W.3d 100, 111 (Mo. App. E.D.2004). In order to be liquidated so as to allow interest, a claim must be fixed and determined or readily determinable, but it is sufficient if the amount due is ascertainable by computation or by a recognized standard. *Id.*

In the instant case, the amount owed Appellant was not capable of ascertainment until the value of the real property was appraised and settled. Further, the amount was not liquidated until the trial court determined the amount in its judgment. Therefore, Appellant is not due prejudgment interest prior to the court's judgment. For the same reason, the amount owed Appellant was not capable of payment until it was ascertained. Therefore, Appellant was not able to be paid the respective amounts six months, one year, and two years, respectively, from the date of Moerschel's death, as set forth in the agreement. It was only possible to pay Appellant from the date of judgment. Once the value of the property was deter-

mined by the court, the court honored the intent of the parties by having the amount distributed in the three-installment manner provided in the partnership agreement, from the date of its judgment.

For the foregoing reasons, Point II is denied.

### Conclusion

Appellant is entitled to $233,000, which is twenty percent (20%) of Green's $1,225,000 appraisal of the property, minus the $12,000 pre-payment. The judgment of the trial court is reversed and remanded for entry of judgment consistent with this opinion.

ROBERT G. DOWD, JR., J., and PATRICIA L. COHEN, J., concur.