**Therese STELZER, Plaintiff-Respondent,**

v.

**CARMELITE SISTERS OF the DIVINE HEART OF JESUS OF MISSOURI, d/b/a St. Agnes Home, Defendant-Appellant.**

No. 41843.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 19, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 1981.

Application to Transfer Denied
Sept. 8, 1981.

Joseph M. Kortenhof, St. Louis, for defendant-appellant.

Douglas Dowd, St. Louis, for plaintiff-respondent.

SIMON, Judge.

This is an appeal from a jury verdict awarding Therese Stelzer damages against the Carmelite Sisters of the Divine Heart of Jesus of Missouri, d/b/a St. Agnes Home (Sisters). Stelzer sought damages from the Sisters for slander and tortious interference with a business expectancy. The trial court entered a directed verdict in favor of defendant on the slander count, and the jury awarded Stelzer $2,000 actual and $3,000 punitive damages on the tortious interference count. We reverse.

The Sisters raise three issues on appeal. First, that the trial court erred in not granting a directed verdict for the Sisters because plaintiff's evidence failed to establish the requisite elements for the claim of tortious interference with a business expectancy. Second, that the trial court erred in not granting a directed verdict on the claim of tortious interference with a business expectancy after granting a directed verdict on the issue of slander. Third, that the trial court erred in submitting an instruction that was confusing, uncertain and internally conflicting.

Therese Stelzer worked as a nurse at St. Agnes Home from May 1973 until May 1975. Stelzer resigned from St. Agnes after a fellow employee was dismissed. Stelzer's resignation was amicable, there were no ill feelings between her and her supervisors, and she offered to continue working until St. Agnes found a suitable replacement.

Stelzer was periodically recommended for merit raises throughout her employment at St. Agnes. Sister Bernadine, the administrator of St. Agnes, testified that Stelzer was a competent and good nurse. Sister Bernadine also stated that it was brought to her attention that Stelzer had problems with being overly friendly with the nurses' aides at the home. The problem was not serious enough to warrant disciplinary action. However, in her judgment, Sister Bernadine felt that over-friendliness could result in a loss of leadership by Stelzer. Sister Bernadine considered this behavior unprofessional, but could not recall specific instances of Stelzer being over friendly or "in thick" with the aides. This opinion was shared by Mrs. Langa, Stelzer's immediate supervisor.

In June 1975, Stelzer applied for work at the Bethesda Dilworth Nursing Home. All employment applications at Bethesda Dilworth are subject to reference checks. Prior to a reference check, Martha Clark, director of nursing, and Jean Chambliss, administrator of Bethesda Dilworth, approved Stelzer for employment.

Phyllis Williams, the personnel coordinator of Bethesda Dilworth, made a telephone reference check on Stelzer. Williams contacted St. Agnes and talked to Langa. Langa stated that Stelzer's work quantity and quality were excellent. Langa also stated that Stelzer had some problems with her co-workers because she got "in thick" with the nurses' aides.[1] Langa did not state whether Stelzer was eligible for rehiring.

Following the reference check, Williams, Chambliss and Clark jointly decided not to hire Stelzer. Williams then informed Stelzer that she would not be hired. Subsequently, Stelzer instituted action against the Sisters.

Initially, the sisters contend that Stelzer's evidence failed to establish the five elements necessary to prove a claim of tortious interference with a contract or business expectancy: (1) a contract or a valid business relationship or expectancy; (2) the defendant's knowledge of the contract or relationship; (3) defendant must intentionally interfere and induce or cause a breach of the contract or relationship; (4) the absence of justification; and (5) defendant's conduct must result in damages. *Salomon v. Crown Life Insurance Co.*, 536 F.2d 1233 (8th Cir. 1976), *cert. denied*, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976).

---

1. Stelzer testified she exchanged gifts with fellow employees at Christmas, shared the cost of buying a playpen or baby bed for an aide who was going to have a child, baked a birthday cake for an aide and left an old sweater for an aide.

The Sisters specifically contend that the statements to Mrs. Williams were qualifiedly privileged and thus the plaintiff failed to prove "an absence of justification" which is vital to establish a claim of tortious interference with a contract or business expectancy.

The principles set forth by our court in *Cash v. Empire Gas Corp.*, 547 S.W.2d 830 (Mo.App.1976) are applicable to the instant case. In *Cash*, plaintiff's former employer gave a detrimental reference to plaintiff's prospective employer who, consequently did not hire plaintiff. Plaintiff brought an action against his former employer for defamation. On appeal from a judgment for plaintiff, our court reversed, holding that the trial court erred in not directing a verdict for defendant for the reason that the statements made by plaintiff's former employer were qualifiedly privileged. In so doing, our court stated at 547 S.W.2d 833:

> A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest. 50 Am. Jur.2d Libel and Slander § 195. . . .

> It is an established general rule that a communication respecting the character of an employee or former employee is qualifiedly privileged if made in good faith by a person having a duty in the premises to one who has a definite interest therein, * * *. So long as good faith is present, the person seeking the statement is not limited to facts that are within his personal knowledge, but may, and should, pass on to his inquirer all relevant information that has come to him, regardless of whether he believes it to be true or not. . . .

Furthermore, our court stated at 547 S.W.2d 834:

> The rule is recognized in Missouri as well as elsewhere that the existence of a conditional or qualified privilege precludes as (sic) inference of malice from the communication of false and defamatory matter, and the plaintiff has the burden of proving express malice.

It is for the trial court to determine whether the principle of qualified privilege applies, not the jury. *Cash v. Empire Gas Corp., supra.* Once a qualified privilege is found, plaintiff can still recover if he shows that defendant acted outside the privilege. This is done by showing the statement was made in bad faith or with actual and express malice. *Estes v. Lawton-Byrne-Bruner Insurance Co.*, 437 S.W.2d 685, 691 (Mo.App.1969).

In the instant case, it is clear that the principle of qualified privilege is applicable. Therefore, the plaintiff had the burden of proving that the statement was made in bad faith or with actual and express malice.

The plaintiff failed to carry that burden. There was no showing that the statements were made in bad faith. The plaintiff argues that the statements were untrue, but that is not sufficient. If the statements were in fact untrue, there was no showing of malice and it cannot be inferred. At most, the evidence showed a difference of opinion between Stelzer, Mrs. Langa and Sister Bernadine concerning Stelzer's relationship with her co-workers. The trial court erred in failing to sustain the motion for a directed verdict at the close of the entire case.

Our ruling on this point eliminates the need to consider the Sisters' other points.

Judgment reversed.

SMITH, P. J., and SATZ, J., concur.