**Alfred J. FLEISCHER, Sr., Eva Fleischer, and Alfred J. Fleischer, Jr., d/b/a Fleischer–Seeger Construction Company, Plaintiffs/Appellants,**

v.

**HELLMUTH, OBATA & KASSABAUM, INC., Defendant/Appellant.**

No. 61775.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 30, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 14, 1994.

Application to Transfer Denied March 22, 1994.

Kenneth A. Slavens, Steven H. Schwartz, Brown & James, P.C., St. Louis, for appellants.

Merle L. Silverstein, Rosenblum, Goldenhersh, Silverstein & Zafft, Clayton, and Edward L. Foote, Winston & Strawn, Chicago, IL.

AHRENS, Judge.

In this jury-tried case defendant Hellmuth, Obata & Kassabaum, Inc., appeals from the judgment in favor of plaintiffs, Alfred J. Fleischer, et al., d/b/a Fleischer–Seeger Construction Company, for damages for professional malpractice. Plaintiffs cross-appeal from the judgment in favor of defendant on plaintiffs' claim for tortious interference with contract. We reverse in part and affirm in part.

Defendant raises seven points on its appeal. We find one point dispositive: the trial court erred in denying defendant's motions for directed verdict and judgment notwithstanding the verdict for the reason that plaintiffs failed to make a submissible case of negligence.

In determining whether plaintiffs made a submissible case, "all the evidence must be viewed in the light most favorable to the plaintiffs, giving them the benefit of all favorable inferences and disregarding defendant's evidence, except insofar as it might be favorable to the plaintiffs." *Tompkins v. Kusama*, 822 S.W.2d 463, 464 (Mo.App.1991) [quoting *Yoos v. Jewish Hosp.*, 645 S.W.2d 177, 183 (Mo.App.1982)].

This litigation arose out of a construction project involving renovation of a vessel known as The S.S. Admiral. On December 22, 1983, the owner, S.S. Admiral Partners, entered into a contract with plaintiffs for services as the construction manager for this project. On December 29, 1983, the owner entered into a separate contract with defendant as the architect for the project.

Plaintiffs agreed to provide services as construction manager for the conversion of the vessel into an entertainment center, and to "provide leadership to the 'Construction Team' on all matters relating to construction." The construction team consisted of the owner, construction manager, architect, and a show designer/creative director. Plaintiffs' contract with owner provided for a

substantial completion date of May 1, 1985, at a guaranteed maximum price of $15,085,-000.

Defendant's contract with owner required defendant to provide architect services in five phases: schematic design, design development, construction documents, bidding or negotiations, and construction. Defendant's contract required that its basic services were to be "provided in conjunction with the services of the Construction Manager".

Plaintiffs' first amended petition sought damages in tort for professional malpractice. Plaintiffs alleged that defendant: provided plans and specifications upon which the construction work was estimated and performed; knew that the plans and specifications would be relied upon by plaintiffs as construction manager and plaintiffs' subcontractors and suppliers; and failed to exercise the ordinary care required of a reasonably prudent architect in the preparation of the plans and specifications and in performing its architectural services in the administration of the project. Plaintiffs further claimed that as a direct and proximate result of defendant's negligence, plaintiffs were "materially damaged and financially destroyed".

Specifically, plaintiffs claimed damages resulting from litigation over the termination of plaintiffs' contract, arbitration with owner, suits by subcontractors and plaintiffs' bonding company, attorneys fees and expenses, and sums for settlement with the bonding company and some thirty subcontractors, inability to obtain bonds for other projects, and lost profits on this and other projects. Major components of plaintiffs' damage claims were: $3.0 million paid by plaintiffs to its surety to settle claims for payments made to owner and sub-contractors, $290,000 paid by plaintiffs to sub-contractors, and $600,000 in lost profits.

Defendant asserts plaintiffs' claim seeks recovery for negligent interference with contract, which is not cognizable under Missouri law. *J. Louis Crum Corp. v. Alfred Lindgren, Inc.*, 564 S.W.2d 544, 550–51 (Mo.App. 1978). Plaintiffs respond that the jury verdict was on plaintiffs' claim for professional negligence, not negligent interference with contract. Further, defendant claims a "qual-ified privilege" because it was acting pursuant to its contractual duties to owner. Defendant also states "[defendant] had no duty to protect plaintiffs' economic interests which conflicted with the owner's interests. [Defendant's] only duty in this case was to the owner." Plaintiffs counter that the issue is one of foreseeability that the architect's negligence would injure the construction manager. Plaintiffs argue, once foreseeability is established, the absence of privity and the absence of physical damage are irrelevant, and plaintiffs may recover for economic losses alone. We disagree.

■ Plaintiffs' claims here do not involve a lease or other property interest. Instead, they involve purely economic losses resulting from what the jury found to be negligence on the part of defendant in performing its contract to provide architectural services for owner. For the reasons set out herein, we hold that an architect owes no tort duty of care and is not liable to a general contractor or construction manager for damages for economic losses arising as a result of the architect's negligent performance of its contract with the owner.

■ The general common law rule is that a defendant who has contracted with another owes no duty to a plaintiff who was not party to the contract, nor can that plaintiff sue for the negligent performance of the contract. Denial of liability for the negligent performance of a contract by one who was not a party to the contract has been based on two principal grounds. The first is the concern that legal protection of this kind of interest would lead to excessive and unlimited liability. *Westerhold v. Carroll*, 419 S.W.2d 73, 77 (Mo.1967) (citing *Roddy v. Missouri Pac. Ry. Co.*, 104 Mo. 234, 15 S.W. 1112 (1891) and *Winterbottom v. Wright*, 10 M. & W. 109, 152 Eng.Rep. 402). The second is that it "would restrict and embarrass the right to make contracts by burdening them with obligations and liabilities to others which parties would not voluntarily assume." *Id.*

The Missouri Supreme Court, while recognizing exceptions to the general rule, has held that "any extension of the limits of liability in this field should be done on a case-

by-case basis, with a careful definition of the limits of liability, depending upon the differing conditions and circumstances to be found in individual cases." *Id.* at 78. Exceptions to the rule of privity which have been recognized include: where an act of negligence is imminently dangerous to the lives or safety of others or the thing dealt with is inherently dangerous; fraud or collusion; express warranty; implied warranty; and error in the transmission of telegrams.[1]

Our Supreme Court in *Westerhold* provided guidance as to conditions and circumstances which are important in determining whether a defendant is liable to a third party with whom defendant is not in privity. To be considered first are the policy concerns of exposing the defendant to an unlimited number, or indeterminate class, of potential claimants and depriving parties of control over their contracts. *Id.* at 79. If neither of these concerns are present in a particular case, then the determination "involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm." *Id.* at 81.

To support their position that defendant owed a duty of care to plaintiffs, plaintiffs rely primarily on *Chubb Group of Ins. v. C.F. Murphy & Assoc.,* 656 S.W.2d 766 (Mo.App. 1983), in which our Western District recognized a cause of action for an architect's negligent interference with a tenant's right to use and enjoy a leasehold. The Court found that "[a]rchitects and contractors owe a duty to exercise the care required of their professions to persons with whom they are not in privity when the injury to those third parties is foreseeable." *Id.* at 775. Defendant asserts the architect's duty of care under *Chubb* extends to personal injury or property damage, not the "mere loss of a business expectation." Plaintiffs contend

that the focus of *Chubb* is foreseeability, and an architect would know and foresee that negligence in preparing plans and in failing to properly administer the construction would cause injury to the general contractor or construction manager.

According to the *Chubb* court, the existence of a tort duty to third parties on the part of an architect turns on whether the injury is foreseeable and within the policy considerations of avoiding both unlimited liability and the overburdening of those who assume contractual responsibilities. *Id.* at 776. The *Chubb* court also used the same "balancing of factors" analysis outlined in *Westerhold.*

If a duty to third parties exists, the next question to be resolved is the type of injury for which liability attaches. Liability is similarly premised on whether the injury was foreseeable and within the policy considerations of avoiding both unlimited liability and the overburdening of those who assume contractual responsibilities. *Id.* at 776. The *Chubb* court found the answer to that question turns on the nature of plaintiff's injury. *Id.* The Western District found actionable a claim for negligent interference with a tenant's right to use and enjoy a leasehold interest. Defendants in *Chubb* characterized plaintiff's injury as a "mere loss of a business expectation" or "loss of a void oral contract". The court rejected defendant's characterization due to the existence of the lease, a recognized property interest, and noted that "extending liability would not expose defendants to unlimited liability to all establishments which may have suffered some loss of business as a result of the collapse of the roof." *Id.*

Plaintiffs further argue that the issue of foreseeability of injury and damage to a general contractor (construction manager) when an architect is negligent is addressed by the Restatement (Second) of Torts § 766C. § 766C recognizes an exception to the general rule that negligent interference with a contract is not actionable, when a duty of care to prevent pecuniary loss is extended to a third party whom the actor knows to be

---

1.  See *Westerhold v. Carroll,* 419 S.W.2d at 77, for a thorough analysis of the historical precedent behind the rule of privity and citations of cases involving exceptions to the rule.

"pecuniarily affected by the service rendered." The Commissioners' Comment (e.) to the Restatement sets forth representative cases, which include an attorney who negligently prepares an invalid will and is held liable to the intended beneficiary, the telegraph company that negligently transmits a message and is held liable to the addressee, and the surveyor who negligently surveys land for the vendor and is held liable to the vendee. The exceptions which our Missouri courts have recognized to date with regard to liability of an architect to third parties for negligence have been limited to a surety, *Westerhold*, and a tenant whose rights under a lease were affected, *Chubb*. In each of the Restatement examples as well as in the Missouri cases, the extent to which the transaction was intended to affect the plaintiff is significantly greater than in the present case. Plaintiffs cite no Missouri cases where the Restatement § 766C exception has been extended to an architect's liability to a general contractor or construction manager, and our research has disclosed no such authority. The policy considerations of avoiding excessive and unlimited liability and overburdening those who assume contractual responsibilities, in our opinion, require that the exception not be further extended under the circumstances of this case.

Plaintiffs claim that our Supreme Court in *Westerhold* and the Eighth Circuit Court of Appeals in *Aetna Ins. Co. v. Hellmuth, Obata & Kassabaum, Inc.*, 392 F.2d 472 (8th Cir. 1968) have found that issues of unlimited liability and control over contracts are not present in the type of case involving architect's negligence. Plaintiffs further contend that although both cases involved a surety-owner relationship, neither court relied upon that as a basis of its decision. We disagree.

In *Westerhold*, our Supreme Court found an architect liable to an indemnitor who was subrogated to the rights of a surety, for payments made on performance and labor and material payment bonds, as a result of the architect's negligence in executing certificates of work done and materials furnished. There, the court found the construction contract, architect's contract, and the bonds were interrelated agreements, and the relations between the architect and surety were so close, in Judge Cardozo's words, "as to approach that of privity." The court determined that the contractual provision that payments by the owner to the contractor were to be made only on certificates by the architect was "as much for the protection of the surety as the owner." *Westerhold*, 419 S.W.2d at 78. In addition, the surety relied on the contractual provision. To forego the requirement of privity of contract in that situation would not lead to excessive and unlimited liability or lead to endless complications in following out cause and effect. Liability could not exceed the value of the work and materials actually furnished and those paid for based on the architect's certificates, and that liability could not extend to anyone not in actual privity of contract except the surety and its subrogees. *Id.* at 78–79. Further, the parties to contracts would not be deprived of control over their contracts. If the parties to the contract made changes to the contract which resulted in increased risk to the surety, the surety is discharged wholly or to the extent of the surety's increased risk. *Id.* at 79.

In *Aetna*, the Eighth Circuit relied on the reasoning in *Westerhold*, in holding an architect who was negligent in supervising a construction project liable in tort to a surety on a contractor's performance bond. The *Aetna* court interpreted *Westerhold* as abolishing the automatic following of the rule requiring privity except in cases where a defendant would be exposed to unlimited liability to an unlimited number of persons or deprived of control over their contracts. *Id.* at 475. The *Aetna* court found, as did the *Westerhold* court, that these policy concerns were not present when the third party claimant was a surety. Despite plaintiffs' contention otherwise, the result in both *Aetna* and *Westerhold* is directly related to the fact that the third party claimant was a surety, which distinguishes them from the present case because they involved sureties as opposed to the construction manager.

In the present case, as opposed to *Aetna* and *Westerhold*, if a duty of care to plaintiffs is imposed on defendant in the absence of privity, defendant could be exposed to liabili-

ty to an unlimited number of persons. Plaintiffs dispute this claim, stating that the liability "relates only to that very narrow group (the construction manager and perhaps some subcontractors) who were injured by the architect's negligence...." If foreseeability of injury is the focus, as plaintiffs argue using *Chubb*, then there is no principled reason why liability would not extend beyond the construction manager to the subcontractors, materialmen, and workmen who suffered economic injury as a result of defendant's alleged negligence. This is precisely the type of situation which the rule requiring privity seeks to prevent.

In addition, defendant (and other similarly situated design professionals) would be deprived of control over their contracts. In most situations, economic loss is a subject for contract negotiation and assignment. To find that an architect owes a duty of care to the construction manager could hinder the architect's ability to negotiate concerning the risk of economic loss.

Other jurisdictions are split over the question of whether, in the absence of privity of contract, an architect owes a duty of care to a general contractor. Plaintiffs point out that many jurisdictions, relying primarily on the element of foreseeability, have upheld the rights of third parties (contractors and subcontractors) to recover for economic losses against a negligent architect and have rejected the absence of privity defense.[2]

Other jurisdictions have held an architect owes no duty of care to a contractor in the absence of a direct contractual relationship between the contractor and architect.[3] We find this to be the more reasoned approach. The Ohio Supreme Court stated "[t]he architect's duties both to owner and contractor arise from and are governed by the contracts related to the construction project. While such a duty may be imposed by contract, no common-law duty requires an architect to

protect the contractor from purely economic loss." *Floor Craft v. Parma Com. Gen. Hosp.*, 54 Ohio St.3d 1, 560 N.E.2d 206, 209 (1990). The Court went on to say: "[p]rotection against economic losses caused by another's failure properly to perform is but one provision the contractor may require in striking his bargain. Any duty on the architect in this regard is purely a creature of contract." *Id.*

We find as a matter of law that on the facts of this case, defendant owed no duty of care to plaintiffs. Therefore, plaintiffs failed to make a submissible case of negligence against defendant. Accordingly, the trial court's judgment on Count I is reversed.

Plaintiffs' cross-appeal claims that Instruction No. 14 erroneously instructed the jury that truth is a defense to a claim of tortious interference with contract. We need not address plaintiffs' claim of instructional error, since we find as a matter of law that plaintiffs failed to make a submissible case of tortious interference with contract.

In order to establish a cause of action for tortious interference with contract, a plaintiff must show the following elements: (1) a contract; (2) the defendant's knowledge of the contract; (3) defendant must intentionally interfere and induce or cause a breach of the contract; (4) the absence of justification; and (5) defendant's conduct must result in damages. *Stelzer v. Carmelite Sisters, Etc.*, 619 S.W.2d 766 (Mo.App.1981). Plaintiffs failed to make a submissible case because they did not show defendant's absence of justification. "No liability arises for interfering with a contract or business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification." *Community Title v. Roosevelt Federal Savings & Loan Assoc.*, 796 S.W.2d 369, 372 (Mo. banc 1990).

---

**2.** *See A.R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla.1973); *Donnelly Construction Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1292 (banc 1984); *Davidson & Jones, Inc. v. County of New Hanover*, 41 N.C.App. 661, 255 S.E.2d 580 (1979); *Detweiler Bros., Inc. v. John Graham & Company*, 412 F.Supp. 416 (E.D.Wash.1976).

**3.** See, e.g., *Floor Craft v. Parma Com. Gen. Hosp.*, 54 Ohio St.3d 1, 560 N.E.2d 206, 209 (1990); *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194 (Del.1992); *Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 374 S.E.2d 55 (1988); *2314 Lincoln Park West Condominium Assoc. v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346 (1990).

Plaintiffs were unable to establish that defendant was not justified in its dealings with the owner, because defendant was operating pursuant to a qualified privilege. A qualified privilege extends to "all statements made bona fide in performance of a duty, or with a fair and reasonable purpose of protecting the interest of the person making them, or the interest of the person to whom they were made." *Kennedy v. Kennedy*, 819 S.W.2d 406, 410 (Mo.App.1991). Since defendant had a contractual duty to owner to "keep the Owner informed of the progress and the quality of the Work and ... endeavor to guard the Owner against defects and deficiencies in the Work of the Construction Manager and Trade Contractors", defendant acted pursuant to a qualified privilege when reporting to the owner concerning plaintiffs' performance. This qualified privilege protects defendant from an inference of malice. *Stelzer*, 619 S.W.2d at 768. Therefore, in order for plaintiffs to recover, they must show that defendant acted outside the privilege. *Id.*

In a similar case, a demoted school principal sued his supervisors for tortious interference with contract. The trial court dismissed the petition, which was affirmed on appeal. *Franklin v. Harris*, 762 S.W.2d 847 (Mo.App.1989). The court held "performance by the supervisor of his duty to evaluate and report to the Board on a teacher's performance is justified and not wrongful even if such report carries with it the possibility or even probability that the teacher will lose his job." *Id.* [citing *Caverno v. Fellows*, 300 Mass. 331, 15 N.E.2d 483 (1938)]. The evidence must show that the supervisor was motivated solely by malice or ill will towards the plaintiff and not by any purpose to perform his duty as supervisor. *Id.*

"Absence of justification is the absence of any legal right to take the actions complained of." *Forkin v. Container Recovery Corp.*, 835 S.W.2d 500, 503 (Mo.App.1992). In Missouri, plaintiff has the burden of producing substantial evidence to establish the absence of justification. *Id.* Plaintiffs failed to carry this burden. There was no showing that defendant was motivated by malice or ill will towards plaintiffs when defendant reported to the owner about plaintiffs' performance. Even though defendant may have interfered with plaintiffs' contract, plaintiffs' failed to show that defendant was not justified in doing so. Therefore, plaintiffs failed to make a submissible case of tortious interference with contract.

The cross-appeal is denied.

The judgment is reversed in part and affirmed in part.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.