

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

CAPTIVA LAKE INVESTMENTS, LLC, )    No. ED100569
a Missouri Limited Liability Company, )
                                             )
and )
                                             )
CYPRESS CONDOMINIUM AT THE )    Appeal from the Circuit Court
LAKE OF THE OZARKS ASSOCIATION, )    of St. Louis County
                                             )
       Plaintiffs/Appellants, )
                                             )
v. )    Honorable David Lee Vincent, III
                                             )
AMERISTRUCTURE, INC., )
a Missouri Corporation, )
                                             )
and )
                                             )
STEPHEN J. SACCO, )    Filed: April 22, 2014
                                             )
       Defendants/Respondents. )

### Introduction

Captiva Lake Investments, LLC, a Missouri Limited Liability Company

(Captiva), and Cypress Condominium At The Lake Of The Ozarks Association (Cypress)

(collectively Appellants) appeal from the trial court's judgment granting the Amended

Motion for Summary Judgment of Ameristructure, Inc. (Ameristructure) and

Ameristructure's president and professional engineer Stephen J. Sacco (Mr. Sacco)

(collectively Respondents) and entering judgment in favor of Respondents and dismissing

with prejudice Counts I, IV, V and VII of Appellants' Second Amended Petition. We affirm.

## Factual and Procedural Background

In 2005, Majestic Pointe Development Company, LLC (MPDC) was endeavoring to construct the Majestic Pointe Condominiums (Project) on some land MPDC owned in the Lake of the Ozarks. On August 8, 2005,[1] MPDC, as owner of the Project, contracted with Kidwell Construction, Inc. (Kidwell) as general contractor for the construction of two condominium complexes known as Building No. 4 and Building No. 5 in furtherance of the Project (General Contract). Building No. 5 was completed; Building No. 4 was not.

On September 9, 2005, and then as amended on October 27, 2005, to convert an hourly pay structure to a fixed fee of $129,000.00, Kidwell and Ameristructure contracted (Subcontract) for Ameristructure to provide architectural and engineering services with regard to Building No. 4, with a clause specifically limiting Ameristructure's liability on the Project to the agreed-upon fixed fee. The Subcontract provided for eight site visits during construction, but contained no provision regarding construction supervision.

On December 2, 2005, Ameristructure signed an Architect's Consent Agreement at the request of National City Bank (Bank) that either purported to consent to MPDC's collateral assignment of the General Contract it had with Kidwell to Bank or consent to

---

[1]Supplemented on April 17, 2006.

2

MPDC's collateral assignment of the Subcontract between Ameristructure and Kidwell to Bank.[2]

On March 13, 2006, MPDC, in order to obtain additional funding for the Project, in particular the completion of Building No. 4, signed two promissory notes in favor of Bank in the amounts of $20,080,000.00 and $1,200,000.00 and agreed as security for said notes (collectively "Note" or "Loan") to an "Assignment of Plans, Specifications, Construction and Service Contracts, Licenses, and Permits" (Construction Deed of Trust or Collateral Assignment) whereby MPDC collaterally assigned to Bank any and all of its right, title, and interest in certain contracts for construction and other services issued for Building No. 4. On this same date, Kidwell executed a Contractor's Consent Agreement

---

[2] Appellants maintain that under the terms of the Architect's Consent Agreement, Ameristructure represented to Bank that the contract it had with Kidwell was actually with MPDC, and therefore Ameristructure is collaterally estopped from asserting the lack of privity of contract between it and MPDC and thus Bank and then Captiva. Appellants maintain that because they are now successors in interest of Bank's rights, they have privity of contract with Ameristructure and thus summary judgment was improvidently granted to Ameristructure. However, in a July 17, 2008 letter written by Ameristructure attorney Frank Keefe to Bank's Scott Dallman regarding the Architect's Consent Agreement, he states that "although the agreement states in the RECITALS Section C that '[t]he Borrower … has entered into a written agreement with the Architect dated Sept. 9, 2005 …' the agreement for architectural services is actually between Ameristructure, Inc. and Kidwell Construction, not Majestic Pointe Development, L.L.C." The letter goes on to inform Bank of Kidwell's default in payment to Ameristructure for its services pursuant to the Subcontract. Additionally, the only contract dated September 9, 2005 in the record is the Subcontract between Ameristructure and Kidwell. Accordingly, Captiva was aware of the misnomer in the Architect's Consent Agreement when it took over the Project from Bank in July 2009. Ameristructure had no contractual relationship with MPDC, rather only with Kidwell. As such, MPDC had no ability or right to collaterally assign the Subcontract between Ameristructure and Kidwell, so the "Contract" referred to as being collaterally assigned in the Architect's Consent Agreement must be the General Contract. However, the agreement specifically defines the "Contract" being assigned as the one dated September 9, 2005, between Kidwell and Ameristructure for architectural services to be performed on the Project by Ameristructure for a fixed fee to be paid by Kidwell of $129,000.00, so it cannot be the General Contract, but the Subcontract. "If language which appears plain considered alone conflicts with other language in the contract, or if giving effect to it would render other parts of the contract a nullity, then we will find the contract to be ambiguous." Tuttle v. Muenks, 21 S.W.3d 6, 9 (Mo.App. W.D. 2000).

Furthermore, the record contains no response to Mr. Keefe's letter to Bank with regard to the incorrect language. Therefore, this issue has clearly not been resolved by the parties and they are thus free to argue the interpretation of the discrepancies favorable to their respective positions, prohibiting our discernment of the parties' intent. The impossibility of either outcome is created by a patent ambiguity in the language which creates an irreconcilable conflict in the in the Architect's Consent Agreement.

Even though the face of the Architect's Consent Agreement contains a patent ambiguity as herein described, we find that its resolution is not necessary to decide this case.

and acknowledged or consented to the Construction Deed of Trust or Collateral Assignment between MPDC and Bank for the purpose of procuring additional funds in furtherance of the Project.

In June 2008, Bank commissioned an engineering firm, EDM, Inc. (EDM), to review certain construction documents and building elements to prepare a Building Analysis Report of Building No. 4 (EDM Report). On June 25, 2008, the EDM Report was created outlining certain deficiencies in Building No. 4.

MPDC defaulted on its obligations to Bank.

On June 16, 2009, Captiva was created. On July 22, 2009, Bank and Captiva entered into an agreement whereby Bank transferred its interest in the Loan and Construction Deed of Trust to Captiva (Loan Assignment). The Loan Assignment provides "this Assignment is given without recourse, warranty or representation, express or implied." Captiva then foreclosed on the property. On August 11, 2009, Captiva delivered to Ameristructure a notice titled "Notification of Disposition of Collateral and Notification of Foreclosure of Real Property." On September 1, 2009, Captiva purchased the Project condominium property, including Building No. 4, from itself as the holder of the Note, in "as is where is" condition.

On September 29, 2010, Captiva filed the initial petition in this case. On June 8, 2011, Captiva filed its first amended petition. On March 7, 2012, Ameristructure and Mr. Sacco filed their motion for summary judgment.

On April 2, 2012, Cypress was created as a non-profit corporation homeowner's association with regard to the common areas of the condominium property. On that same day, Captiva filed a motion to "further amend its petition by adding parties and counts,"

4

seeking to add Cypress as a party-plaintiff. On April 4, 2012, Captiva filed another motion to amend its petition, which the trial court granted on April 9, 2012.

On April 9, 2012, Captiva filed a second amended petition (petition), adding Cypress as a plaintiff. Cypress maintains it owns all common areas within and appurtenant to Building No. 4 of the Project, and alleges it represents the rights and interests of the condominium owners with respect to said common elements.

The petition with Captiva and Cypress as plaintiffs asserts a claim of negligence against Ameristructure in Count I; breach of contract against Ameristructure in Count IV; negligence against Mr. Sacco in Count V, and breach of implied warranties against both Ameristructure and Mr. Sacco in Count VII. All of these claims are based on monetary damages Appellants maintain they have incurred or will incur based on rectifying alleged deficiencies in Building No. 4 as noted in the EDM Report. Appellants assert the costs of completion and remediation of Building No. 4 amount to $2,950,000.00.

On May 22, 2013, Ameristructure and Mr. Sacco filed their amended motion for summary judgment, or in the alternative for partial summary judgment (motion). On June 27, 2013, Appellants filed their response to the motion. On July 11, 2013, Respondents filed their reply. On July 26, 2013, Appellants filed their sur-reply with memorandum in support filed August 5, 2013. On August 6, 2013, the trial court called, heard and took the motion as submitted. On August 26, 2013, the trial court entered its judgment granting the motion and entering judgment in favor of Respondents thereon and dismissing with prejudice Counts I, IV, V and VII of Appellants' petition. The trial court also denied the alternative motion as moot. This appeal, timely filed on October 1, 2013, follows.

5

## Points Relied On

In their first point, Appellants maintain the trial court erred in entering summary judgment with regard to Count I, negligence against Ameristructure; Count IV, breach of contract against Ameristructure, and Count VII, breach of implied warranties against both Respondents, of their petition because Ameristructure consented to Kidwell's assignment of its subcontract with Ameristructure to Bank and/or Appellants; there exists privity of contract between Appellants and Respondents, and Ameristructure expressly agreed to supervise the Project during construction in consideration of and payment for services by Bank.

In their second point, Appellants claim the trial court erred in entering summary judgment with respect to Count VII of their petition because Respondents did not and cannot demonstrate entitlement to summary judgment on Count VII.

In their third point, Appellants assert the trial court erred in entering summary judgment with respect to Count V, negligence against Mr. Sacco, of their petition because whether Mr. Sacco owed a duty of care to Appellants is a disputed issue of material fact.

In their fourth point, Appellants contend the trial court erred in entering summary judgment with regard to Counts I, IV, V and VII of their petition because in doing so it considered authority that was factually inaccurate and filed late by Respondents without providing Appellants notice or an opportunity to respond.

## Standard of Review

Summary judgment is a proper remedy when the moving party demonstrates there are no genuine issues of material fact and the party is entitled to judgment as a matter of law. Comp & Soft, Inc. v. AT & T Corp., 252 S.W.3d 189, 194 (Mo.App. E.D. 2008).

6

Our review of the judgment is *de novo*. ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo.banc 1993). Genuine issues exist when the record contains material that raises plausible but contradictory views of the essential facts. Id. at 382. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. Id. at 376.

A defending party moving for summary judgment may establish a right to judgment by showing facts that negate any one of the claimant's elements. Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 120 (Mo.banc 2010). "If the moving party makes a prima facie showing that it is entitled to judgment as a matter of law, the non-moving party then has a specific burden. Id. A denial may not rest upon the mere allegations of the party's pleading. Id. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial. Id. The court accords the non-moving party the benefit of all reasonable inferences in the record. ITT, 854 S.W.2d at 376. An order of summary judgment may be affirmed under any theory that is supported by the record. Burns v. Smith, 303 S.W.3d 505, 509 (Mo.banc 2010).

Discussion

Point I

Appellants maintain Ameristructure consented to Kidwell's assignment of its Subcontract with Ameristructure to Bank and hence, to Captiva, when Bank assigned its interest in the MPDC Notes, which included the Architect's Consent Agreement, to Captiva as successor-in-interest. As a result, Appellants claim Ameristructure *expressly*

7

agreed to supervise the Project during construction in consideration of and payment for services by Bank.  Appellants also assert that there exists privity of contract between Appellants and Respondents.

We disagree with Appellants' claim that Ameristructure *expressly* agreed to supervise the Project during construction in consideration of and payment for services by Bank.

First, Ameristructure and Mr. Sacco never entered into any services contract, architectural or otherwise, directly with MPDC or Bank in connection with Building No. 4.

Second, nowhere in the Subcontract does Ameristructure expressly agree to provide supervision.  In contrast, it specifically provides for only eight site visits.  It also limits its liability on the project to $129,000.00.  This language is clear and unambiguous with regard to the duties of Ameristructure.

Third, within the Architect's Consent Agreement, only the *Recitals* section indicates "the Architect has agreed to perform architectural design and supervision services in connection with the construction of certain improvements to be made to the Property."  Recitals are not strictly a part of the contract because they do not impose contractual duties on the parties.  G.H.H. Investments, L.L.C. v. Chesterfield Management Associates, L.P., 262 S.W.3d 687, 693 (Mo.App. E.D. 2008).  Therefore, the language in the *Recitals* portion of the Architect's Consent Agreement relied on by Appellants is of no effect because Missouri courts look to the recitals to determine the intent of the parties only when the operative language is ambiguous, uncertain, or indefinite.  Id. at 694.  In this case, Ameristructure's contractual duties in terms of its

8

architectural and design services on the Project are clearly set out in the operative language of the Subcontract, which prevails over the *Recitals* in the Architect's Consent Agreement. Id.

Appellants maintain Ameristructure consented to Kidwell's assignment of the Subcontract to Bank, and hence, to Appellants. However, nothing unequivocal in the record suggests that Kidwell assigned its rights in the Subcontract to Bank, much less that Ameristructure consented to such an assignment. The Architect's Consent Agreement is too ambiguous to support such an assertion that Ameristructure consented to any kind of assignment. In addition, it is "well recognized that in a contract for personal services, which involves special knowledge, skill or a relation of personal confidence, the duty to perform is not assignable without the consent of both parties." Sympson v. Rodgers, 406 S.W.2d 26, 30 (Mo. 1966); Kenneth D. Corwin, Ltd. v. Missouri Medical Service, 684 S.W.2d 598, 600 (Mo.App. E.D. 1985). Furthermore, there is no suggestion in the record that Ameristructure ever even purported to consent to the Loan Assignment from Bank to Captiva in 2009, regardless of its intent on December 2, 2005, in signing the Architect's Consent Agreement or on March 13, 2006, when the Assignment from MPDC to Bank actually took place.

Under the Contractor's Consent Agreement, Kidwell acknowledged, consented, and agreed that MPDC collaterally assigned MPDC's rights under the General Contract between MPDC and Kidwell to Bank. However, by its terms, the 2006 MPDC Assignment to Bank was limited *to MPDC's rights*, including MPDC's rights under the General Contract with Kidwell. The 2006 MPDC Assignment does not purport to assign any rights belonging to Kidwell under the General Contract.

9

Likewise, the Contractor's Consent Agreement does not purport to effect any assignment of Kidwell's rights whatsoever, and certainly not Kidwell's rights under its Subcontract with Ameristructure. Thus the Contractor's Consent Agreement does not entitle Captiva to assert Kidwell's rights under the Subcontract with Ameristructure.

The Architect's Consent Agreement, like the Contractor's Consent Agreement, merely indicates that Ameristructure recognizes MPDC's collateral assignment to Bank of its General Contract with Kidwell. Bank was interested in obtaining MPDC's rights, as the owner of the Project, as collateral for the Loan. For the same reasons stated above, the Architect's Consent Agreement does not entitle Captiva to assert Kidwell's rights under the Subcontract with Ameristructure.

Appellants also maintain there exists privity of contract between Captiva and Ameristructure with regard to the Subcontract between Kidwell and Ameristructure in which Ameristructure promises to provide its architectural services because Captiva bought the Note held by Bank and took assignment of all contracts concerning the Project, including documents under which Kidwell's rights were transferred to Bank as a security interest under the terms of the Note, which interests were lawfully assigned to Captiva by Bank. Again, Bank can only assign rights to Captiva which Bank has. Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 128 (Mo.banc 2010) ("The only rights or interests an assignee acquires are those that the assignor had at the time the assignment was made."). Bank did not have Kidwell's rights under Kidwell's Subcontract with Ameristructure because Kidwell did not assign or transfer those rights to Bank, nor could it without the express consent of Ameristructure. Sympson, 406 S.W.2d at 30.

10

Generally, a defendant who has contracted with another owes no duty to a plaintiff who is not a party to that agreement, nor can a non-party sue for negligent performance of the contract. Owens v. Unified Investigations & Sciences, Inc., 166 S.W.3d 89, 92 (Mo.App. E.D. 2005). This general rule of privity is designed to protect contractual parties from exposure to unlimited liability and to prevent burdening the parties with obligations they have not voluntarily assumed. Id.; Westerhold v. Carroll, 419 S.W.2d 73, 77 (Mo.1967). See also, Fleischer v. Hellmuth, Obata & Kassabaum, Inc., 870 S.W.2d 832 (Mo.App.E.D. 1993). In Fleischer, we specifically held that "an architect owes no tort duty of care and is not liable to a general contractor or construction manager for damages for economic losses arising as a result of the architect's negligent performance of its contract with the owner." Id. at 834. This holding was based on:

> The general common law rule … that a defendant who has contracted with another owes no duty to a plaintiff who was not party to the contract, nor can that plaintiff sue for the negligent performance of the contract. Denial of liability for the negligent performance of a contract by one who was not a party to the contract has been based on two principal grounds. The first is the concern that legal protection of this kind of interest would lead to excessive and unlimited liability. Westerhold v. Carroll, 419 S.W.2d 73, 77 (Mo.1967) (citing Roddy v. Missouri Pac. Ry. Co., 104 Mo. 234, 15 S.W. 1112 (1891) and Winterbottom v. Wright, 10 M. & W. 109, 152 Eng.Rep. 402). The second is that it 'would restrict and embarrass the right to make contracts by burdening them with obligations and liabilities to others which parties would not voluntarily assume.' Id.

Fleischer, 870 S.W.2d at 834. Applying this holding and reasoning to the case at bar, Respondents owe no duty to current Project owners Appellants, who were not parties to Respondents' Subcontract with general contractor Kidwell to perform architectural services, for alleged negligent performance of the contract and economic losses therefrom. Id.

11

Appellants maintain since the trial court found in its May 16, 2013 order and judgment with respect to Appellants' breach of implied warranties claim against defendant Norman Stanley Fott (Mr. Fott)[3] that "Captiva Lake Investments has privity of contract to sue [Mr. Fott] by assignment of all contracts concerning the Majestic Pointe Project" that there must also be privity of contract between Captiva and Respondents. Appellants claim "to the extent Plaintiff Captiva has privity of contract concerning the Ameristructure-Kidwell contract sufficient to justify the maintenance of claims against Ameristructure's 'sub consultant' Norman S. Fott, it necessarily must also enjoy privity of contract sufficient to justify the maintenance of all applicable and similar claims against Defendants Ameristructure and Sacco." However, the order and judgment to which Appellants refer is an interlocutory order and therefore does not invoke the doctrine of law of the case. Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co., Inc., 931 S.W.2d 166, 176 (Mo.App. W.D. 1996). The order and judgment denied Mr. Fott's motion to dismiss. Conversely, the trial court in its summary judgment specifically and expressly found there was no privity of contract between Appellants and Respondents. The summary judgment, from which Appellants here appeal, is not an interlocutory order but rather is final and conclusive.

In any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff. L.A.C. ex rel. D.C. v. Ward Parkway Shopping Center Company, L.P., 75 S.W.3d 247, 257 (Mo.banc 2002). Whether a duty exists is purely a question of law. Id.

---

[3] An architect subcontracted by Respondents.

Appellants claim the September 2005 Subcontract between general contractor Kidwell and subcontractor Ameristructure contained terms by which Ameristructure would provide architectural services with regard to Building No. 4 in exchange for compensation. Captiva maintains that as the current owner of Building No. 4, it clearly has the right to maintain a negligence claim against Ameristructure and a professional negligence claim against Mr. Sacco, even without a contract between it and Kidwell.

Again, as noted above, even assuming *arguendo* that Captiva has whatever rights MPDC assigned to Bank in 2006, MPDC had no privity of contract with Ameristructure and Mr. Sacco. Even though Captiva maintains its status as MPDC's successor-in-interest, Captiva lacks privity with Ameristructure and Mr. Sacco because MPDC had no contract with Ameristructure and Mr. Sacco. MPDC only had a contract with Kidwell. Kidwell, in turn, had a contract with Ameristructure and Mr. Sacco. Furthermore, the Subcontract specified Ameristructure's duties and limited its liability to its fixed fee *to Kidwell*. These contractually limited duties and liabilities cannot be extended by the actions of others not party to the agreement, i.e., MPDC and then Bank's transfer of its interest in the Project to Appellants, especially four years after the formation of the Subcontract. To allow such an extension would lead to excessive and unlimited liability; would hinder a professional individual's or business's ability to negotiate the risk of economic loss; would restrict and embarrass the right to make contracts by burdening the contracting parties with obligations and liabilities to others which the parties would not otherwise assume, and would deprive parties of control over their contracts. Fleischer, 870 S.W.2d at 834-37.

13

Appellants' negligence claims are further prohibited by the economic loss doctrine. The economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature. Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184, 192 (Mo.App. S.D. 2010). Recovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence. Id. None of those scenarios is alleged here; rather, Appellants allege only economic damage. Accordingly, the economic loss doctrine bars their negligence claims in Counts I and V[4] as well. Appellants also assert error in granting summary judgment on Point VII of the petition, which alleges breach of implied warranties. Although Appellants do not specifically discuss Count VII within the argument portion of their first point, we find that to the extent the trial court granted summary judgment in Respondents' favor on Count VII based on the lack of privity between the parties as generally discussed in this point, that judgment is affirmed. Count VII is discussed in more detail in Point II. Point I is denied.

## Point II

Appellants claim the trial court erred in entering summary judgment in favor of Respondents on Count VII of the petition. Count VII alleged a claim of Breach of Implied Warranties against Ameristructure and Mr. Sacco.

As hereinbefore set out, the lack of a contractual relationship or privity establishing a duty stemming from Respondents to Appellants forecloses their breach of contract and negligence claims. Their claim of breach of implied warranties against Respondents not only is foreclosed by the lack of a legal relationship of promise or duty

---

[4] Count V alleging negligence against Mr. Sacco is raised and discussed in Point III.

14

between Appellants and Respondents as previously set forth, but does not withstand scrutiny for the additional reason that implied warranties do not apply to service contracts or the construction of a multi-unit condominium structure.

Appellants attempt to transpose the Subcontract for professional architectural services between Respondents and Kidwell from a contract for personal services into a contract for the sale of goods, i.e., architectural plans.

First, Appellants belie their attempt when they argue on page 25 of their brief that "in the instant case privity does exist between Plaintiffs and Defendants Ameristructure and Sacco as providers of professional services." Second, the allegations of their petition make it clear that the nature of the tort action asserted by Appellants arises from the rendering of services to be provided by a contract and that the conduct of Respondents is the basis of the allegations. See, e.g., Autry Morlan, 332 S.W.3d at 194.

An implied warranty arises by operation of law and must be applied in a reasonable sense. Renaissance Leasing, 322 S.W.3d at 129. With this in mind we examine the concept of implied warranty as it relates to real estate. San Luis Trails Ass'n v. E.M. Harris Building Co., 706 S.W.2d 65, 68 (Mo.App. E.D. 1986). A purchaser is granted a right of recovery against the builder-vendor under an implied warranty of habitability or quality where structural defects are present in consequence of poor workmanship or substandard materials or both. Logan v. Amberson, 764 S.W.2d 116, 118 (Mo.App. W.D. 1988). Implied warranties of merchantable quality and reasonable fitness apply in the purchase of a new home from the home's vendor-builder by the first purchaser only. Smith v. Old Warson Development Co., 479 S.W.2d 795 (Mo.banc 1972); Summer Chase Second Addition Subdivision Homeowners Ass'n v. Taylor-

15

Morley, Inc., 146 S.W.3d 411, 415 (Mo.App. E.D. 2004). This theory of recovery, which is derived from the common law, is a limited departure from the strict application of the doctrine of *caveat emptor*. Old Warson, 479 S.W.2d at 796; Summer-Chase, 146 S.W.3d at 415.

Neither Respondent was the builder-vendor in this case. The remedy and right of action allowed in Old Warson is contractual and extends to cover latent structural defects in a house. San Luis Trails Ass'n, 706 S.W.2d at 68. The contractual nature of the implied warranty limits the cause of action to the first purchaser of the house from the builder. Crowder v. Vandendeale, 564 S.W.2d 879, 881 (Mo.banc 1978).[5] Appellants were not the first purchasers, nor were they purchasers of a house from the builder in this case. Rather, the development in this case is of an entire multi-unit condominium complex, which does not qualify as a house. See Korte Const. Co. v. Deaconess Manor Ass'n, 927 S.W.2d 395, 405 n.4 (Mo.App. E.D. 1996) ("The *Old Warson* implied warranty of habitability applies only to newly-constructed houses…. The development in this case is more akin to an apartment complex than a house."). As such, a breach of implied warranties claim does not lie here.

Finally, Bank expressly disclaimed all warranties in clear and obvious language in its assignment to Appellants upon the July 22, 2009 consummation of the Amended and Restated Loan Sale Agreement between Bank as seller and Captiva as buyer. The Loan Assignment provides, "this Assignment is given without recourse, warranty or representation, express or implied." Captiva then foreclosed on the property, with knowledge of any and all defects, and on September 1, 2009, purchased the Project

---

[5]Overruled on other grounds, see Sharp Bros. Contracting Co. v. American Hoist & Derrick Co., 703 S.W.2d 901, 903 (Mo.banc 1986).

16

condominium property, including Building No. 4, from itself as the holder of the Note, in "as is where is" condition. In light of these facts, Appellants cannot now claim breach of implied warranties.

For all of the foregoing reasons, Point II is denied.

Point III

In their third point, Appellants assert the trial court erred in entering summary judgment with respect to their claim for negligence against Mr. Sacco in Count V of their petition because whether Mr. Sacco owed a duty of care to Appellants is a disputed issue of material fact. This argument has been resolved in our discussion of privity and duty set forth under Point I. As to whether a disputed issue of material fact prevents summary judgment on this claim despite our determination that Respondents are entitled to judgment as a matter of law, Appellants contend Mr. Sacco had a heightened duty of care to Appellants as a design professional that does not require privity of contract and to which the economic loss doctrine does not apply. In support of this claim, Appellants assert that on July 6, 2006, Mr. Sacco affixed his signature and official seal to the structural plans and specifications for Building No. 4 of the Project. Appellants further claim that Mr. Sacco provided only preliminary plans, according to which the majority of construction work performed on the Project was done, despite the plans' lack of details necessary for successful construction. Appellants state these preliminary plans were signed and sealed by Mr. Fott, under the direct supervision of Mr. Sacco. Appellants then provide a list of the ways in which the plans were deficient. Appellant maintains the licensed architect "who signs and seals the documents shall be 'personally and professionally responsible' for them." Section 327.401.1 RSMo 2000; Bird v. Missouri

17

<u>Bd. of Architects, Professional Engineers, Professional Land Surveyors and Landscape Architects</u>, 259 S.W.3d 516, 522 (Mo.banc 2008).

Appellants were not clients of Mr. Sacco. Mr. Sacco, individually, was not even a party to Ameristructure's Subcontract with Kidwell, in which we already determined Appellants lacked privity. Therefore, Mr. Sacco had no duty to Appellants, heightened or otherwise, due to his professional status as a licensed architect. <u>Bird</u> concerned a disciplinary action on the professional license of an engineer who allegedly affixed his seal on the plans of an architect without having personally supervised the architect in the making of the plans, in violation of certain regulations of his profession. <u>Bird</u>, 259 S.W.3d at 519-520. <u>Bird</u> did not concern privity of contract or liability to a client, but rather whether Mr. Bird, the engineer, was subject to discipline by the Board for Architects, Professional Engineers, and Professional Land Surveyors and Landscape Architects, which had suspended his license for affixing his seal to building plans that were drafted in large part by a licensed architect whose work was not done under Mr. Bird's immediate personal supervision. <u>Id.</u>

Appellants claim they are third parties to whom Mr. Sacco should have foreseen damage resulting from his allegedly negligent rendition of professional services. Appellants were corporations not in existence at the time of the Subcontract, to which Mr. Sacco as an individual was not a party, and therefore their foreseeability argument fails. Further and more fundamentally, there was no privity of contract between and no duty extending from Mr. Sacco to Appellants. Finally, the economic loss doctrine applies to foreclose Count V because Appellants' only claimed damages are economic losses.

See <u>Autry Morlan</u>, 332 S.W.3d at 192; <u>Fleischer</u>, 870 S.W.2d at 834; <u>Korte Constr. Co. v. Deaconess Manor Ass'n</u>, 927 S.W.2d 395, 404-05 (Mo.App. E.D. 1996).

Appellants' negligence claim against Mr. Sacco is barred as a matter of law, and we discern no disputed facts with regard to this determination. Point III is denied.

Point IV

Appellants contend the trial court should not have considered authority that was factually inaccurate and filed late by Respondents without providing Appellants notice or an opportunity to respond. Specifically, Appellants complain of a document containing a chronology of a series of events and their corresponding dates submitted by counsel for Respondents at the hearing on the motion for summary judgment. Appellants complain the trial court erred in admitting the document into the record because they were not previously made aware of the document; it had not been attached to any of the summary judgment motion pleadings; and it was introduced without foundation or attestation as to its authenticity and authorship.

The document complained of was used by Respondents as an aid during oral argument. Although Appellants complain of some factual or clerical errors in the chronology, they do not contend it presented any new facts or documented events not already contained in the summary judgment record. Respondents did not submit the chronology as part of the summary judgment record pursuant to Rule 74.04(c)(5) as a document or submit it to the trial court as an exhibit. Rather, *Appellants* filed the document with the trial court attached to their motion to strike it.

Upon Appellants' protest to the use of the aid at the time of the hearing, the trial court granted them five days to respond to the chronology. In response, Appellants filed

19

their motion to strike. Appellants' motion to strike the chronology was never noticed for hearing, nor was it ruled upon by the trial court. Therefore, the only alleged error for this Court to review is the trial court's allowance of Respondents' use of a visual aid in conjunction with oral argument on their motion for summary judgment. We find no error. Furthermore, there is no indication in the record that the chronology expanded the grounds for the summary judgment motion, presented new facts or made new arguments, but rather merely provided a compilation of materials already on file in the summary judgment record. For the foregoing reasons, Point IV is denied.

## Conclusion

The trial court's judgment is affirmed.

Sherri B. Sullivan, Judge

Lawrence E. Mooney, P.J., and
Robert G. Dowd, Jr., J., concur.